406 F.2d 352
 Johnny F. WORD, No. 82830, Appellant,
v.
STATE OF NORTH CAROLINA, Appellee.
James Johnnie MATTHEWS, Appellant,
v.
Glenn O. WOMBLE, Sheriff, Nash County, North Carolina, Appellee.
James Lee WILLIAMS, Appellant,
v.
STATE OF NORTH CAROLINA, Appellee.
 No. 10765.
 No. 11487.
 No. 11770.
 United States Court of Appeals Fourth Circuit.
 January 15, 1969.*
 
 James L. Underwood (Court-assigned Counsel) for appellants.
 Ralph A. White, Jr., Staff Attorney, Raleigh, N. C. (Thomas Wade Bruton, Atty. Gen., of North Carolina, on the brief), for appellee.
 Before HAYNSWORTH, Chief Judge, SOBELOFF, BOREMAN, BRYAN, WINTER and CRAVEN, Circuit Judges, sitting en banc.*
 HAYNSWORTH, Chief Judge:
 
 
 1
 We have for decision the question whether, in light of Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426, federal habeas corpus provides a present remedy for a state prisoner seeking to attack, on constitutional grounds, a conviction in another state which underlies a detainer filed with his keeper. We hold that it does and that the action is properly brought in a district court in the demanding state.
 
 
 2
 * The petitioner in each of these three cases is presently serving a sentence imposed upon him in Virginia. Those sentences are not challenged. Each of them has also been convicted of an offense in North Carolina, and North Carolina has lodged detainers with Virginia prison officials. Each asserts constitutional infirmity in his North Carolina conviction, and the allegations, if proven, would entitle each to relief. The first question then is whether habeas corpus furnishes an available remedy for adjudication of those claims now, or whether each prisoner has no remedy until he shall have fully served his Virginia sentence and shall have been delivered into the physical custody of a North Carolina warden for service of the challenged sentence.
 
 
 3
 In 1965, the petitioner, Williams, was convicted of an offense in Virginia, and a sentence of seventeen years was imposed upon him. Five months later, he was tried and convicted in North Carolina on charges of armed robbery, and a sentence of twenty-five years was imposed upon him. He was then returned to Virginia for service of the Virginia sentence, and a detainer was lodged with the Virginia authorities. Under the administrative regulations governing the operation of Virginia's prisons,[1] the fact that the detainer has been filed must be taken into account in determining the level of custody in which he will be held. It makes him ineligible ever to attain the status of a trusty or to be assigned to a job where the level of custody is low.
 
 
 4
 Unquestionably, when he becomes eligible for parole, the detainer will have an adverse effect upon his chances for conditional release.
 
 
 5
 The petitioners, Word and Matthews, are in comparable situations, the differences going only to the gravity of the offenses of which each was convicted and the length of their sentences. The detainers require their relatively close confinement while in prison in Virginia and have, or will have, an adverse effect upon their consideration for parole.
 
 
 6
 In Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426, the Supreme Court canvassed some of the reasons strongly militating against artificial barriers to early adjudication of claims of constitutional invalidity of convictions, as had we. Rowe v. Peyton, 4 Cir., 383 F.2d 709. If Williams must wait the ten or fifteen years remaining before Virginia delivers him to North Carolina for service of the North Carolina sentence, witnesses essential to the establishment, or refutation, of the factual bases of his claim may be unavailable because of death, illness or loss of memory. No one's recollection will then be as reliable as it now is, and many will have forgotten all they once knew about it. If there is now no transcript of the 1966 North Carolina trial proceedings, it is quite likely that one could not be produced ten or fifteen years hence, for reporters die and retire, or lose or destroy their notes of old proceedings. If a retrial of Williams were found to be necessary some ten to fifteen years from now, it is not unlikely that North Carolina would find reprosecution impossible because of the unavailability of witnesses or their faded memories. Nor, if his constitutional claim is provable, should Williams be required to wait until he begins service of the invalid sentence to commence his judicial attack upon it. With all of the new and magnified problems caused by long delay in hearing his claims, he could languish in prison for years before the invalidity of his detention was established.
 
 
 7
 Word, on the other hand, has only five months to serve in North Carolina. With time off for good behavior, the sentence will expire in approximately four months. If he must wait until he begins service of that sentence to commence a proceeding attacking it, he will have served a substantial part of it before he could reasonably hope to obtain a hearing in the state trial court. If the state trial court did not grant a prompt hearing, or if, after a hearing it denied relief, Word could not possibly complete exhaustion of his state remedies before seeking federal habeas corpus. Unless he has some remedy now, he probably will never have access to a federal court and he will serve all or a substantial part of his sentence before he can expect initial state consideration of its validity.
 
 
 8
 In short, there are present in the context of these cases all of the reasons greatly favoring an early resolution of such claims which exist in the context of an attack upon a consecutive or successive sentence.
 
 
 9
 In Peyton v. Rowe, the Supreme Court broadly discarded the prematurity doctrine of McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238. In holding federal habeas corpus available to attack a consecutive or successive sentence which the prisoner has not yet begun to serve, it said, "* * * a principal aim of the writ is to provide for swift judicial review of alleged unlawful restraints on liberty. * * * Common sense dictates that prisoners seeking habeas corpus relief after exhausting state remedies should be able to do so at the earliest practicable time."[2] It again rejected the notion that the prisoner's immediate release is the sole office of the writ, and sanctioned a liberal interpretation of §§ 2241(c) (3) and 2243[3] to the end that appropriate remedial orders may issue, without unnecessary delay, whenever a constitutional claim is established with a resultant effect upon the nature or duration of the prisoner's custody.
 
 
 10
 In the Peyton v. Rowe situation, of course, the consecutive or successive sentences were imposed by the same sovereign. A realistic appraisal led ineluctably to the conclusion that the warden held the prisoner for service of all of his sentences. Here the successive sentences sought to be attacked were imposed by another sovereign, but the difference is not one of legal or practical significance. The Virginia warden's authority to detain each of these prisoners is clearly dual. When the authorization of the Virginia commitment is terminated by full sentence service or by pardon or parole, the Virginia warden will continue to detain the prisoner under the authorization of the detainer. The prisoner has no hope of release until both authorizations are ended, for if either is withdrawn or expires, the warden will continue to hold him under the other. Moreover, the presence of the detainer requires the warden to hold the prisoner with a heavier hand than the Virginia commitment alone demands. The duality of the warden's authority has an immediate, practical consequence. Now or later it will have other reflections in parole consideration.
 
 
 11
 It thus seems clear to us that each of these prisoners is in custody, within the meaning of § 2241(c) (3), under the North Carolina detainer as well as under the Virginia commitment. The First Circuit has recently held that a state prisoner was "in custody" under a federal detainer, the validity of which he could attack in a § 2255 proceeding. Desmond v. United States Board of Parole, 1 Cir., 397 F.2d 386. That decision reinforces our conclusion. The desirability of this result is recognized by the Advisory Committee on Sentencing and Review, of which Judge Sobeloff is Chairman, of the American Bar Association Project on Minimum Standards for Criminal Justice in the tentative draft of its report on Standards Relating to Post-Conviction Remedies. See the Commentary to § 23 on pages 44-45.
 
 II
 
 12
 Williams sought relief in the United States District Court for the Eastern District of North Carolina, while Word and Matthews brought their actions in the Eastern District of Virginia. The former we think proper; the latter, where permissible, infrequently preferable.
 
 
 13
 The custody of the Virginia warden under the authority of the detainer is North Carolina's. He holds the prisoner for North Carolina, not for Virginia. It is a North Carolina judgment that is under attack, and North Carolina's Attorney General, not Virginia's must defend it. The records and witnesses, with the exception of the prisoner, are in North Carolina. Virginia is unconcerned with the outcome, while North Carolina has much at stake. Such considerations require a look far beyond identification of the immediate physical custodian.
 
 
 14
 It is not unfair to the prisoner to require that he seek relief in the district court for a district within the sentencing state. If the state court provides an effective remedy,[4] it surely must be exhausted under the requirements of 28 U.S.C.A. § 2254(b) in the courts of that state, here North Carolina, not in the courts of that state in which he is now physically present. If there are factual issues and the state court holds a full and fair hearing, no evidentiary hearing will be necessary in the district court. If the state court does not grant such a hearing, it is no greater burden on the prisoner to require him to proceed in a district court of that state than he would have shouldered if the state court had given him his due. If fairness demands the presence of the petitioner at a hearing, the district judge has the power to require the state to seek his temporary custody, at the state's expense, for that purpose. The writ of habeas corpus ad testificandum is probably available to avoid any possible inclination on the part of the holding state to be uncooperative.[5]
 
 
 15
 In 1944 the Judicial Conference of the United States recognized that with respect to postconviction review of federal sentences the decidedly preferred forum for postconviction review was the sentencing court rather than the court of the district in which the prisoner was confined. It recommended to the Congress, and the Congress enacted, what is now 28 U.S.C.A. § 2255. The history and the heavy difficulties encountered under the old practice are chronicled in United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232.
 
 
 16
 Now that it appears, as a logical extension of Peyton v. Rowe, that a prisoner is in custody under a detainer, there is opened another divergence between the district of confinement and a district within the sentencing state. Should we hold that the writ must be sought in the district of confinement we would be met with all of the practical problems and difficulties which § 2255 solved or avoided with respect to postconviction review of federal sentences, save only the problem of concentration of cases in districts in which federal penal institutions are located. The record of the state trial will be readily available in the sentencing state; it may not be elsewhere. If an evidentiary hearing is necessary, the state trial judge, the prosecuting attorney, defense counsel and other witnesses will generally be available in the sentencing state; it may be a practical impossibility to produce them in the state of detention. The sentencing state and the state of detention may be widely separated. There is actually pending in this court a case in which a Maryland prisoner is seeking to attack a California conviction which underlies a detainer. Should California be required to defend its judgment in Maryland, to send to Maryland the record of the California trial, the record of any California postconviction hearing, a member of the staff of California's Attorney General and, if an evidentiary hearing is necessary, the California trial judge, prosecutor, defense counsel and other witnesses? Is it fair to the prisoner to require him to maintain his action in Baltimore if he is dependent upon California witnesses to establish his factual claims?
 
 
 17
 There is one countervailing consideration. If the action must be maintained in the sentencing state, pretrial conferences between the prisoner and his lawyer may be a practical impossibility. The experience under § 2255, however, has not suggested that as a major problem. On the other hand, the difficulties which would be encountered if the action were required or permitted to be maintained in the district of detention are major obstacles.
 
 
 18
 Legislation was necessary to authorize federal prisoners to bring their actions in the sentencing court, but that was because, in the usual case, there would be no one in that district who could be said to be his custodian. Here, there is no such conceptual difficulty. To the extent that Williams is held under the North Carolina detainer, the Virginia warden is acting for North Carolina. For all substantive purposes, in the context of an attack upon the detainer, Williams is in the custody of North Carolina and of its officials who issued the detainer, or who could procure its withdrawal if ordered by a court to do so. North Carolina's attorney general would appear clearly to be such an official. Without new legislation, there should be no difficulty in the enforcement of the orders of a district court in the sentencing state.
 
 
 19
 On the other hand, an action in a district court in the state of detention would be met with jurisdictional problems as well as the practical difficulties to which we have adverted. In their petitions in the Eastern District of Virginia, Word and Matthews named as the respondents the State of North Carolina and one of its law enforcement officials, neither of which could be served with process in Virginia. The actions were properly dismissed for want of jurisdiction. If the Virginia warden had been the named respondent, there would remain a jurisdictional problem. While he is acting for North Carolina in holding these prisoners under the detainers, he owes North Carolina no duty to defend his authority. His duty of loyalty is exclusively to Virginia. While he would be expected to notify North Carolina of the pendency of the action, he would not be expected to do more, for the action in every practical and substantive sense is one against North Carolina or its officials, no one of whom is suable in his official capacity or subject to process in Virginia.[6]
 
 
 20
 Nor do we think that Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, as explained in its subsequent history, is a bar to our conclusion that the action should be brought in a district court in the sentencing state.
 
 
 21
 In Ahrens v. Clark, a number of German citizens sought their release from confinement under deportation orders as enemy aliens. They were actually confined on Ellis Island in New York, but they sought the writ in the District of Columbia Circuit, naming the Attorney General as the respondent. A majority of the court held that the District Court for the District of Columbia Circuit was without jurisdiction to entertain the petition. The problem was not one of "custody," but of construction of the words "within their respective jurisdictions" in § 2241, which qualify the general grant of power to the Supreme Court, its justices, the district courts and circuit judges to issue writs of habeas corpus. The legislative history of the Act of February 5, 1867, 14 Stat. 385 was examined. It was noted that the quoted words were introduced into the bill after an objection that, otherwise it would allow a district judge in Florida to bring before him men convicted, sentenced and held in Vermont. It was concluded that the words were meant to limit the jurisdiction of district courts to that one within which the prisoner was physically confined.
 
 
 22
 The dissenters in Ahrens v. Clark thought the words were referable solely to the personal jurisdiction of the court over the custodian. While they thought that in the absence of very unusual circumstances, such an action ought not be allowed to proceed in a state where a vacationing warden might be found temporarily, far from his duty station, personal jurisdiction over the custodian was the only requisite. Since the writ operates solely upon the custodian, personal jurisdiction over him is indeed essential, and the dissenters found in the legislative history only a purpose to foreclose a construction that such personal jurisdiction had an extraterritorial reach.
 
 
 23
 Only Mr. Justice Douglas, who wrote for the Court in Ahrens v. Clark and Mr. Justice Black, who joined in the dissent, are now members of the Court. But we need not speculate about the result if the precise Ahrens v. Clark situation were presented to the Court today,[7] for subsequent cases have made it plain that physical presence of the prisoner within the district is not an invariable prerequisite.
 
 
 24
 In Hirota v. General of the Army MacArthur, 338 U.S. 197, 69 S.Ct. 197, 93 L.Ed. 1902, Mr. Justice Douglas took the pains to carefully explain that when the petitioner[8] is beyond the boundaries of the United States, physically present within the geographic boundaries of no district court, the words so broadly read in Ahrens v. Clark have no application. In Ahrens v. Clark, he said, the court was solely concerned with "the distribution of judicial power among the several District Courts," "a problem of judicial administration" in the light of a statute construed as a legislative disapproval of unnecessarily lengthy travel by prisoners to attend their hearings. In Ahrens v. Clark, he thought, the hearing could be held as conveniently in New York as in the District of Columbia, but "[t]here is no room for niggardly restrictions" upon the availability of the writ, and the governing statutes should receive a generous construction. He was emphatic in his opinion that the statute does not leave the prisoner without a remedy when physically absent from the United States.
 
 
 25
 Subsequently, the writ has been used to question the legality of the detention of American citizens detained by military authority abroad. See United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8; Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508; Day v. Wilson, 101 U.S.App.D.C. 69, 247 F.2d 60.
 
 
 26
 In Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329, the Court was presented with the question of the territorial reach of the writ of habeas corpus ad prosequendum. As codified, issuance of that writ is authorized by § 2241 and is subject to the same limiting words "within their respective jurisdictions." The petitioner was not physically present in the district in which the writ was sought, but its issuance was approved. It was pointed out, of course, that the histories of the writs of habeas corpus ad prosequendum and ad subjiciendum were quite different, and territorial limitations upon the former would greatly restrict its usefulness.
 
 
 27
 In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285, 92 A.L.R.2d 675, the Supreme Court held that a habeas corpus proceeding, begun in Virginia when the prisoner was still serving a sentence in that state, was not aborted when he was paroled to the custody of a Georgia parole officer and became a Georgia resident under limited supervision. Ahrens v. Clark was distinguished on the basis of the still earlier case of Ex parte Endo, 323 U.S. 283, 304-307, 65 S.Ct. 208, 89 L.Ed. 243, in which it was held that the proceeding could continue despite the involuntary removal of the interned Japanese petitioner from the district, as long as a proper representative of his custodian was present.
 
 
 28
 From all of these cases it now seems clear that if the words "within their respective jurisdictions" in § 2241 mean anything more than that the court may act only if it has personal jurisdiction of a proper custodian and the capacity, within its geographic boundaries, to enforce its orders,[9] physical presence of the petitioner within the district is not an invariable jurisdictional prerequisite. It gives way in the face of other considerations of fairness and strong convenience. It will not be applied to leave one in prison without an effective remedy, to limit the reach and usefulness of related writs authorized by the same statute or to require the dismissal of proceedings once they have been properly begun. It is little more than a precatory direction, as the author of the majority opinion in Ahrens v. Clark explained in Hirota v. MacArthur.
 
 
 29
 Neither the Congress in 1867 nor the Ahrens v. Clark court in 1948 was concerned with today's problem. There is no indication that either envisioned it, for it is purely the product of much more recent developments.
 
 
 30
 It is clear that the Congress in 1867 thought that a district judge in Florida should not have the power to call before him a man convicted, sentenced and held in Vermont. Only a judge in Vermont should have that power; and no one today suggests that anyone else should possess it in the context of an attack upon the Vermont conviction. But there is nothing in the statute, or in its legislative history, to suggest that the Congress in 1867 thought that if the Vermont prisoner were involuntarily removed to Florida, he would be deprived of his remedy in Vermont and relegated to an inadequate one, without witnesses, in Florida. There is every indication that the Congress in 1867 thought Vermont should be answerable for its judgment in Vermont and should not be called upon to defend it in Florida.
 
 
 31
 The court in Ahrens v. Clark was not concerned with a problem of multistate convictions or the need to fashion adequate remedies for attacks upon successive convictions first sanctioned by the Supreme Court in Peyton v. Rowe, only a few months ago. The petitioners in Ahrens v. Clark were seeking to attack the deportation orders under which they were then being held in New York. Except for the fact that the ultimate superior of their immediate custodian and the authority of the orders was in the District of Columbia, it was the stock situation of the Vermont men which concerned the Congress of 1867. There was no suggestion that New York was not the more convenient forum.
 
 
 32
 Had Williams been sufficiently alert to have filed his petition for federal habeas corpus before his return to Virginia the District Court for the Eastern District of North Carolina would have had unquestioned jurisdiction to entertain it. His subsequent involuntary removal to Virginia would not defeat it, as Jones v. Cunningham shows. By what reason, then, should it be said that he loses his remedy entirely if he is not so precipitate or if North Carolina's return of him to the immediate custody of Virginia is so swift that he has no opportunity to prepare and file his petition before crossing the state border? Williams did nothing to waive for seventeen years his right to be heard. Since, because of the detainer, as we have held, North Carolina has a continuing custody of him, his right to postconviction relief should be the same as it would have been had North Carolina not sent him beyond her borders.
 
 
 33
 The congressional reaction on the only occasion it has considered a similar problem was enactment of § 2255 authorizing and requiring federal prisoners to seek postconviction relief in the sentencing court rather than in the district of detention.[10] Now that Peyton v. Rowe has opened the way for state prisoners to attack successive sentences, precisely the same problem arises with respect to state prisoner cases. The only difference is that here one would not expect the same concentration of state prisoner cases as was experienced under the old practice with respect to federal prisoner cases. That, however, was only one of the considerations which led to enactment of § 2255. All of the others are present here in equal measure.
 
 
 34
 The experience under § 2255 has been so uniformly good and that under the old practice so uniformly beset with grave practical problems and difficulties, that one would expect the same congressional response here if this problem were now laid in the lap of the Congress. The courts need not await congressional action, however, for as long as the proceedings are brought in the district within which the sentencing state's attorney general has his office, there will clearly be personal jurisdiction of a proper custodian.[11]
 
 
 35
 Our conclusion that these convictions may be attacked in a district of the sentencing state,[12] therefore, is entirely consistent with recent, clearly enunciated congressional policy and, under subsequent interpretations of Ahrens v. Clark, is not foreclosed by the "within their respective jurisdictions" phrase of § 2241.[13] Unless, because of the presence of special circumstances, fairness demands an exercise of jurisdiction in the district of detention, permitting and requiring the petition for federal relief to be brought in the appropriate district in the sentencing state serves important purposes in the administration of justice, and conforms the federal practice to the federal requirement that state remedies be first exhausted in the courts of the sentencing state.
 
 
 36
 We conclude that dismissal of the Williams petition in the Eastern District of North Carolina was erroneous. We affirm the dismissal of the petitions of Word and Matthews in the Eastern District of Virginia.[14]
 
 III
 
 37
 Williams, however, has not exhausted his state remedies. He attempted to file a petition for a writ of habeas corpus in the Supreme Court of North Carolina, but the Clerk of the Court referred the petition to North Carolina's Attorney General. That officer informed Williams that the North Carolina Supreme Court was without jurisdiction to entertain his petition, since, in the view of the writer, the detainer was not a restraint upon Williams' liberty. Williams was further informed that the "proper remedy" was a petition in the trial court under the North Carolina Post Conviction Hearing Act, but that such a petition would not be heard until Williams was returned to North Carolina (ten to fifteen years later).
 
 
 38
 We may assume that the opinion of North Carolina's Attorney General was then shared by the members of the Supreme Court of that state, as it was by the District Judge. All of this, however, was before Peyton v. Rowe, when the influence of McNally v. Hill, was prevalent. Peyton v. Rowe was not an enunciation of a constitutional requirement. It was an interpretation of the scope and reach of the writ of habeas corpus in the federal courts. The states are under no constitutional compulsion to follow the Supreme Court's lead and by judicial interpretation or by statute make their postconviction remedies coextensive with the federal. Peyton v. Rowe did, however, explode the myth that historic precedent compelled the McNally view and compellingly advanced the reasons against restrictive interpretations of such remedies. There has been a strong tendency among the states to conform their postconviction remedies to the federal, and their interest is to retain the right of initial review of their judgments. The influence of Peyton v. Rowe may be expected to supplant in the states the pervasive influence of the now discredited McNally v. Hill.
 
 
 39
 We do not think it futile, therefore, to require Williams to pursue his remedies under the North Carolina Post Conviction Hearing Act, to which he has never resorted. With the many years remaining to be served on his Virginia sentence, he can afford the short period of additional delay necessary to enable North Carolina to reappraise its position in the presence of the new atmosphere created by Peyton v. Rowe.
 
 
 40
 The dismissal of Williams' petition will be vacated and the case remanded with instructions to hold it pending exhaustion by Williams of available state remedies, but to proceed to a hearing and determination of the merits should North Carolina's Supreme Court hold that adequate state remedies are unavailable.
 
 
 41
 Nos. 10,765, 11,487 Affirmed.
 
 
 42
 No. 11,770 Vacated and Remanded.
 
 
 
 Notes:
 
 
 *
 Submitted to the Court en banc September 10, 1968, after having been previously argued before a panel of three
 
 
 *
 Judge Butzner took no part in the consideration or disposition of these cases
 
 
 [1]
 Virginia Correctional System, Classification Manual, 34 (1957)
 
 
 [2]
 Peyton v. Rowe, 391 U.S. 54, 63-64, 88 S.Ct. 1549, 1554, 20 L.Ed.2d 426
 
 
 [3]
 28 U.S.C.A. §§ 2241(c) (3) and 2243
 
 
 [4]
 Most of the states now probably do not provide such a remedy. This is because of the prevalence of the prematurity doctrine of McNally v. Hill, recently but happily overruled, and of the notion that, though his keeper is present in the jurisdiction and the writ readily enforceable, a prisoner may not seek habeas relief unless he, too, is physically present within the jurisdiction. There is a strong tendency among the states, however, to conform their post conviction remedies to the reach of the federal writ. It may be confidently predicted that most of the states will reappraise the scope of their remedies in light of the demise of McNally v. Hill
 
 
 [5]
 Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898, cast doubt upon the interstate reach of the writs of habeas corpusad testificandum and ad prosequendum. The doubt as to the former was not entirely relieved by Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329, in which the latter was held to suffer no territorial limitations. Barber v. Page, 390 U.S. 719, 724, 88 S.Ct. 1318, 20 L.Ed.2d 255, particularly its citation of United States v. McGaha, E.D.Tenn., 205 F.Supp. 949, suggests that the remaining doubt about the reach of habeas corpus ad testificandum is insubstantial. See also, United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, in which it was held that in a § 2255 proceeding, the postconviction court had the power under the All Writs Act (28 U.S.C.A. (Supp. IV) § 1651(a)) to compel the production of the prisoner, confined in another state, for the purpose of testifying.
 
 
 [6]
 We do not hold that under no circumstances is habeas corpus available in the district of detention to attack a foreign conviction. It clearly is available when the foreign conviction underlies a finding of recidivism and the imposition of an additional or extended period of confinement. United States ex rel. Easterling v. Wilkins, 2 Cir., 303 F.2d 883; United States ex rel. Savini v. Jackson, 2 Cir., 250 F.2d 349, 354-355. A state may properly be called upon to defend its own judgment even though it is predicated upon a foreign conviction. We would have a comparable situation here if the petitioners sought only to be relieved of the effects of the detainers which they are experiencing while serving their Virginia sentences. In that situation there would be no particular jurisdictional problem, whether or not North Carolina appeared voluntarily. The action could proceed against the Virginia warden, and the court could enforce its order that he attribute no effect to the detainer in determining the level of custody. A primary purpose of these petitioners, however, is to avoid service of the North Carolina sentences. There is a grave jurisdictional hurdle to be surmounted before a district court in Virginia could effectively deal with that question. The hurdle would be avoided if North Carolina's Attorney General voluntarily submitted to the jurisdiction of the district court in Virginia, but if he did not, the Virginia judgment could bind North Carolina's officials directly or create a basis for a collateral estoppel, only on the theory that the Virginia warden was indeed North Carolina's custodian and that a valid, in personam judgment against him would bind his North Carolina superiors and successors in subsequent proceedings brought in North Carolina. In any case in which the jurisdictional hurdle may be surmounted or avoided, however, the district court of confinement would be free to decline to exercise its jurisdiction, if, in its discretion, considerations of fairness and efficiency clearly indicate that a district in the sentencing state is the preferred forum
 
 
 [7]
 But see Sokol, A Handbook of Federal Habeas Corpus 46-50. The Michie Company (1965)
 
 
 [8]
 The petitioners there were Japanese war lords, but the later cases of American servicemen, and civilians subject to military orders, in foreign service were envisioned
 
 
 [9]
 See D. J. Meador, Habeas Corpus and Magna Carta, University of Virginia Press (1966), page 42. Dean Meador expresses the view that, from the nature of the writ, "* * * [a]ll that is required for effective issuance of the writ is that such a custodian be within the power of the court. It is immaterial where the prisoner is actually confined. * * *."
 
 
 [10]
 Some evidence of the same policy may be found in the 1966 amendment of § 2241 (d) authorizing state prisoners in multi-district states to file their petitions either in the district of detention or in the district within which the sentencing court sat. It was then influenced primarily, however, by a desire to arrange a more even distribution of the work load between such districts
 
 
 [11]
 It was this problem which required legislation to effect the change wrought by the 1966 amendment to § 2241(d) as well as that, by § 2255
 
 
 [12]
 We need not now decide whether prisoners in these circumstances have the options of § 2241(d), for Williams filed his petition in the district in which North Carolina's Attorney General has his official station, the district of detention
 
 
 [13]
 But see Booker v. Arkansas, 8 Cir., 380 F.2d 240, expressing the view that Ahrens v. Clark was a bar to habeas corpus relief in the sentencing state but stating also that McNally v. Hill, recently reversed, was an additional bar to such relief
 
 
 [14]
 Even if the Eastern District of Virginia initially had jurisdiction to entertain Word's petition, it has now lost it. He has informed the court of his parole by Virginia and his release to North Carolina. He is no longer in Virginia's custody, for Virginia now imposes no restraint upon him, and any lingering effect of his Virginia conviction is irrelevant to an attack on his North Carolina conviction
 Word's parole by Virginia to serve his short North Carolina sentence does not militate against our general assumption that the presence of a detainer has an adverse effect upon parole consideration.
 
 
 WINTER, Circuit Judge (dissenting):
 
 43
 Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968), compels the conclusion that petitioners are "in custody" within the meaning of 28 U.S. C.A. § 2241, and that they may presently employ federal habeas corpus to attack state convictions which underlie detainers filed in the state of confinement if resort to available effective state remedies has been unavailing. Peyton v. Rowe does not decide if the attack must be mounted in the district of confinement, the district of sentencing, or both. The decision of the majority in the instant cases that access to the Great Writ should be limited to the district of sentencing is in direct conflict with the controlling case which we are obliged to follow. Leaving aside any question of the better policy as to which district should have jurisdiction,[1] I would conclude that unless or until the Supreme Court of the United States modifies the views it expressed in Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), or Congress revises the habeas corpus sections of the Judicial Code, the district within which petitioner is present at the time that application for the writ is made is the only district which has jurisdiction to hear and determine it.[2]
 
 
 44
 28 U.S.C.A. § 2241 not only requires a habeas petitioner to be "in custody;" it also contains a territorial limitation on the power of the Supreme Court, any justice thereof, the district courts, and any circuit judge to issue the writ.[3] The limiting words "within their respective jurisdictions" were definitively construed in Ahrens. There, after consideration of the statute[4] and its legislative history, the conclusion was reached:
 
 
 45
 "* * * the view that the jurisdiction of the District Court to issue the writ in cases such as this [German nationals present at Ellis Island, New York, within the Eastern and Southern Districts of New York who sought habeas corpus from the United States District Court for the District of Columbia] is restricted to those petitioners who are confined or detained within the territorial jurisdiction of the court is supported by the language of the statute, by considerations of policy, and by the legislative history of the enactment. We therefore do not feel free to weigh the policy considerations which are advanced for giving district courts discretion in cases like this. If that concept is to be imported into this statute, Congress must do so." 335 U.S., at 192-193, 68 S.Ct., at 1445.
 
 
 46
 The majority states that the Ahrens case "as explained in its subsequent history" is not a bar to the conclusion that the writ should be sought in a district court in the sentencing state. While the majority disavows that shifts in court personnel have made the dissent in Ahrens current law,[5] I find no support in the other authorities cited for the conclusion that Ahrens has been subsequently modified.[6] Hirota v. General of the Army MacArthur, 338 U.S. 197, 69 S.Ct. 197, 93 L.Ed. 1902 (1949), represented no departure from Ahrens. It dealt solely with the problem of where a writ should be sought by one not within the territorial confines of any district — a question specifically reserved in Ahrens. 335 U.S. at 192, ft. 4, 68 S.Ct. 1443, 92 L.Ed. 1898. United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955); Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); Day v. Wilson, 101 U.S. App.D.C. 69, 247 F.2d 60 (1957), deal with the same question. That certain persons confined in an area not subject to the jurisdiction of any district court may seek habeas corpus in the district court which has jurisdiction over their keepers' superior is a judge-fashioned rule to deal with the extraordinary case and provides no excuse to override the policy determination by Congress of the proper distribution of judicial power in the usual case where there is a clear choice of districts.
 
 
 47
 Nor do I find Ahrens eroded or shaken by Ex parte Endo, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944), or Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285, 92 A.L.R.2d 675 (1963). They stand for the proposition that once jurisdiction of a district court has attached, in accordance with the principles of the statute and Ahrens, that jurisdiction may not be defeated by removal of the prisoner from the district in which he sought the writ, while present therein.
 
 
 48
 The majority seems to find some comfort in the enactment of 28 U.S.C.A. § 2255. I think the majority misses the lesson that the circumstances surrounding the enactment of that statute and the fact of its enactment teaches. Section 2255 was enacted in an effort to solve the practical problems which applications for writs of habeas corpus by federal prisoners created by reason of the fact that "a habeas corpus action must be brought in the district of confinement." United States v. Hayman, 342 U.S. 205, 213, 72 S.Ct. 263, 269, 96 L.Ed. 232 (1952). Similarly, Congress may redistribute judicial power to issue a writ of habeas corpus upon the application of a prisoner in state custody.[7] To date, it has not done so. But until Ahrens is modified or overruled, we should not refuse to follow the Supreme Court; nor should we override the jurisdictional scheme delineated by Congress even though we may think that it should be reexamined in the light of Peyton v. Rowe.
 
 
 49
 I would reverse and remand in Nos. 10,765 and 11,487, and affirm in No. 11,770.
 
 
 
 Notes:
 
 
 [1]
 The majority opinion concludes that it is better policy for the district of sentencing to have exclusive jurisdiction. The inconvenience to the prisoner of carrying on litigation in a district in which he is not physically present and the justification for the burden to the state of sentencing to defend its judgment in a jurisdiction where it has elected to lodge a detainer, with damaging consequence to the prisoner, do not to my mind make resolution of the policy question completely one-sided. Because in my view these are considerations for Congress, I do not debate this point except to record this caveat
 
 
 [2]
 The same reasons which lead to the conclusion that prisoners in the position of petitioners are "in custody" indicate no difficulty in acquiring jurisdiction over a proper respondent. Presumably petitioners' keepers are within the district of confinement and since they are acting in part under the authority of the district of sentencing, they may be called upon to defend the validity of the latter's judgment. Of course they may seek and employ the aid and cooperation of the district of sentencing to achieve that end. Certainly they are in a better position to obtain such help than the prisoner would be to obtain aid in presenting his case in a district in which he was not present
 
 
 [3]
 28 U.S.C.A. § 2241:
 "(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.
 "(b) The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it." (emphasis supplied).
 
 
 [4]
 The statute then, as now (28 U.S.C.A. § 2243) contemplated that the person making the return to the writ would, in the usual case, produce the body of the prisoner. In regard to this requirement, the Court made this significant statement:
 "It would take compelling reasons to conclude that Congress contemplated the production of prisoners from remote sections, perhaps thousands of miles from the District Court that issued the writ. The opportunities for escape afforded by travel, the cost of transportation, the administrative burden of such an undertaking negate such a purpose. These are matters of policy which counsel us to construe the jurisdictional provision of the statute in the conventional sense, even though in some situations return of the prisoner to the court where he was tried and convicted might seem to offer some advantages." 335 U.S., at 191, 68 S.Ct. at 1444.
 The majority considers that "if fairness demands the presence of the petitioner at a hearing" in the sentencing state the district judge "has the power" to require his presence. The statute provides that unless the application presents only a question of law the body of the prisoner shall be produced. The statute does not recognize the discretion that the majority implies. It is the rare case, unless there has been a full and fair state evidentiary hearing, that an application for habeas corpus raises no question of fact; and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), can rarely, if ever, be satisfied without the prisoner's presence at the state post-conviction hearing. Thus, the majority in effect scraps the policy considerations which impressed the Court.
 
 
 [5]
 If a correct decision of these cases were to depend upon speculation of this sort, the evidence available to an inferior appellate court would create a standoff. In Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338, 5 L.Ed.2d 329 (1961), which considered the territorial reach of the writ of habeas corpusad prosequendum and held that because of different legislative history the phrase "within their respective jurisdictions" did not have the same limiting effect as its counterpart did upon the Great Writ, two present members of the Court — the Chief Justice and Mr. Justice Black — dissented, relying heavily on Ahrens.
 
 
 [6]
 The continuing vitality ofAhrens has been affirmed by other courts of appeal which have considered the issue. Booker v. Arkansas, 380 F.2d 240 (8th Cir. 1967); Duncan v. Maine, 295 F.2d 528 (1st Cir. 1961); Hart v. Ohio Bureau of Probation and Parole, 290 F.2d 550 (6th Cir. 1961).
 
 
 [7]
 In fact Congress partially redistributed judicial power in 1966 by the enactment of P.L. 89-590, codified as 28 U.S.C.A. § 2241(d). That statute gives concurrent jurisdiction to the district courts of a multi-district state wherein a prisoner is confined under state process with a further provision that the district of application, in the exercise of its discretion and in furtherance of justice, may transfer the application to another district court for hearing and determination. That this statute was enacted is further evidence of the general recognition that the district of filing was controlled by considerations of territorial jurisdiction
 
 
 
 50
 SOBELOFF, Circuit Judge (concurring in part and dissenting in part):
 
 
 51
 The majority holds that the detainers lodged with the Virginia warden by the North Carolina authorities, and the underlying convictions, should be attacked in North Carolina. This result can be reached only by disregarding Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 A.L.R. 1898, which plainly holds that "the presence within the territorial jurisdiction of the District Court of the person detained is prerequisite to filing a petition of habeas corpus." 335 U.S. at 189, 68 S.Ct. at 1443. I align myself with Judge Winter in the view that subsequent decisions of the Supreme Court have not drained Ahrens of its vitality, and I find it unnecessary to repeat his well-stated reasons.
 
 
 52
 My most serious disagreement with the majority, however, is not over its holding that the district court in North Carolina, the sentencing state, has jurisdiction to grant relief. I am more concerned by the majority's relegation of the jurisdiction of a district court in the confining state to a secondary status, one that will be "infrequently preferable" to the jurisdiction of a district court in the sentencing state. In so ruling, the majority creates an obstacle to the exercise of habeas jurisdiction in the confining state which I find impermissible, particularly in view of the adverse effects the detainers presently inflict upon the prisoners in Virginia. As the court specifies, among the disadvantages automatically visited upon a Virginia prisoner against whom a detainer has been lodged are that it is taken into account in determining the level of his custody, he is made ineligible for the status of trusty or assignment to any job where the level of custody is low, and his chances for parole are adversely affected. These injuries are not inconsequential.
 
 
 53
 Simply put, my submission is that a prisoner may not be denied access to the federal court in the state where he is confined and is being subjected to additional deprivations by reason of a document issued by another state. If Virginia, the confining state, relies on North Carolina's detainer to justify the imposition of increased harshness upon its prisoner, a federal court in Virginia has a duty to consider on habeas corpus whether the judgment underlying the detainer is constitutionally valid.
 
 
 54
 The majority acknowledges that a confining state must defend a foreign conviction in a district court sitting in the confining state whenever a conviction for recidivism rests in part upon a foreign judgment. It further concedes that "[w]e would have a comparable situation here if the petitioners sought only to be relieved of the effects of the detainers which they are experiencing while serving their Virginia sentences." Indeed, the majority seems to recognize that there is no problem with regard to the jurisdiction of a district court in the state of confinement insofar as it may relieve the prisoner from the effects of the foreign detainer document, regardless of the view taken as to the vitality of Ahrens v. Clark. A footnote to the court's opinion reads:
 
 
 55
 In that situation [where a prisoner seeks only relief from present effects experienced in Virginia] there would be no particular jurisdictional problem, whether or not North Carolina appeared voluntarily. The action could proceed against the Virginia warden, and the court could enforce its order that he attribute no effect to the detainer in determining the level of custody.
 
 
 56
 Paradoxically, the court dismisses the petitions of Word and Matthews, who applied to the federal court in Virginia. In so doing, the court not merely declines to permit the Virginia court to entertain a challenge to the future service of the North Carolina sentence in due course, but in addition denies the petitioners the very remedy the court acknowledges they would be entitled to seek if relief from the Virginia consequences were their only objective.
 
 
 57
 In reaching the conclusion that Word and Matthews may not seek relief from the augmented deprivations suffered in Virginia, the court apparently attaches controlling significance to the fact that "[a] primary purpose of these petitioners, however, is to avoid service of the North Carolina sentences." I think the petitioners may not be turned aside so easily. Having conceded that these petitioners are enduring substantial present penalties in Virginia by reason of the North Carolina detainers and that there is "no particular jurisdictional problem," how then can the court deny them a federal forum in Virginia?
 
 
 58
 If the majority's answer is that these petitioners do not seek relief from the present effects of the detainer, then it construes the petitions much too strictly. Beyond question, the two men are not unconcerned over the present effects upon them in the Virginia prison by reason of the detainer issued by the North Carolina authorities. If anything, the immediate consequences of the detainer would seem to bear down upon them more oppressively than the North Carolina sentence to be served in the future. It is excessively technical and highly unrealistic to treat the present petitioners as unaggrieved by the loss of their normal privileges and opportunities for parole consideration. We should therefore not insist on more explicit allegations. At the very least, the prisoners should be afforded an opportunity to amend, instead of having their petitions dismissed.
 
 
 59
 The majority opinion gratuitously denigrates the jurisdiction of a district court in the state of confinement as "infrequently preferable" to that of a district court in the sentencing state. Apart from the dictate of Ahrens v. Clark, I am unable to agree, for in my view considerations of practicality and fairness weigh heavily against my Brethren's pronouncement.
 
 
 60
 The court adverts to the case of a Maryland prisoner seeking to attack a California detainer and implies that California would be seriously burdened if it had to litigate in Maryland, yet it expresses the opinion that requiring the prisoner to litigate in California would not constitute an undue burden upon him. I do not follow this logic. It is hardly likely that a full hearing could be had in California without affording the prisoner an opportunity to testify. If the answer is that the prisoner may use depositions, then the same is true as to California, which may even more readily rely on depositions in a Maryland proceeding.
 
 
 61
 It is not unfair to the custodian to require him to defend his detainer-based punitive action in the state where the detainer is made operative. When the consequences of a foreign detainer are visited upon a prisoner in the place of detention, fairness to the prisoner demands that the confining state be deemed at least a proper forum, if not the only one, in which to challenge the detainer and the underlying conviction. An invalid conviction is not entitled to be given effect in another state any more than where it was obtained. A prisoner undergoing extra severity should not be told that a court in the place of confinement is "infrequently preferable" to some distant forum, thus thrusting upon him the burden of seeking relief in a jurisdiction where there is little likelihood that he will ever be able to meet his lawyer face to face. It is difficult to imagine anyone conducting a lawsuit under more frustrating circumstances.
 
 
 62
 Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426, favors the earliest possible disposition of issues concerning the validity of a conviction, and I agree with the majority's holding that the federal habeas corpus remedy is presently available to attack the North Carolina detainers and the convictions underlying them. But when the court holds not only that the litigation may proceed in the state which originated the detention order, but insists that the state of confinement will be the "infrequently preferable" forum, the majority enunciates a rule that will in many cases result in undue hardship and a loss of the very protections which Peyton v. Rowe intended to safeguard.