**James Robert RAY**

v.

**UNITED STATES of America.**

Civ. A. No. 15090.

United States District Court,
N. D. Georgia,
Atlanta Division.

May 18, 1971.

James Robert Ray, pro se.

John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., for respondent.

SIDNEY O. SMITH, Jr., Chief Judge.

This is a petition for a writ of mandamus from a federal prisoner confined at the United States Penitentiary in Atlanta. Petitioner seeks to compel respondent to credit his federal sentence with 178 days spent in state custody.

In support of his petition, petitioner alleges that he received a five year sentence on April 7, 1966, for uttering counterfeit postal money orders. On November 1, 1970, while free on parole from this sentence, he was arrested in New York on a state charge and confined in the Queens House of Detention. On either the eighth or ninth of November, 1970, a federal parole violator's detainer was lodged with the state authorities. Petitioner maintains that he spoke with a bondsman about making bail on the state charge, but was informed that, even if he posted bail with state authorities, he would remain in custody under the federal detainer. Having been so informed, petitioner decided against posting bail on the state charge and remained in custody until receiving his state sentence on March 27, 1971.

Petitioner contends that the federal parole violator's detainer was responsible for his continued confinement in the state detention facility, and that respondent must give him credit for this time.

This petition illustrates the inability of a federal court sitting in one state to

ascertain the factual situation surrounding prior state custody which developed in another jurisdiction.

■ Ever since the Fifth Circuit opinion in the case of Davis v. Attorney-General, 425 F.2d 238 (5th Cir. 1970);[1] the federal prisoners confined at the Atlanta Penitentiary have flooded this court with petitions for mandamus seeking to obtain credit against their federal sentence for virtually any time spent in state custody.[2] The inescapable conclusion is that all such prisoners who have ever had simultaneous or overlapping state and federal charges whether "related" or not assume that there is some magic bonanza in Davis which will reduce their federal confinement. Alas, it is simply not found therein. Davis, as we understand it, stands for the limited proposition that a prisoner in state custody who is denied state bail solely because of the presence of a federal detainer should be afforded credit for this "jail time" on any eventual federal sentence imposed under the detainer, if he is not granted such credit by the state.[3] This is in keeping with the 1966 amendment of 18 U.S.C.A. § 3568 expressing the Congressional policy of affording credit for all presentence custody. It has already been pointed out that the granting of state bail, whether actually posted or not, precludes federal credit. See Jackson v. Attorney-General, 447 F.2d 747 (5 Cir. 1971). However, if the federal detainer is not bailable and the posting of state bail is merely a futile gesture resulting in continued confinement under the detainer, credit may sometimes be granted. Davis v. Attorney-General (No. 12632, N.D.Ga., October 14, 1970) (On Remand). See Boyd v. United States, 448 F.2d 477, Appendix (5 Cir., 1971).

This exposition of the different inferences found in Davis illustrates the intricacies of fact which must be ascertained before the rules can be correctly applied. Most of such information is known only to the state officials concerned and in many instances they serve in far distant areas.

The typical petition filed in this court simply states that the prisoner is serving a federal sentence, that he was in state custody for X days at some previous time and was denied bail because of a federal detainer. What proof must he offer to support his claim and how does he do it? What proof must the government offer to rebut the allegation and how is it obtained? Must the government produce at its own expense a police sergeant from Brooklyn or a sheriff from Utah or a magistrate from Wisconsin to prove that state bail was granted? Attempts to handle the matter in formal legal fashion by way of affidavits and records produced through show cause orders have thus far proven less than satisfactory.[4] The only reasonable solution is to place jurisdiction in those agencies which have better access to the state officials, bondsmen, families, etc. who are concerned with the facts surrounding state custody and bail. Every argument which presaged the adoption of 28 U.S.C.A. § 2255 applies to the situation here. Those few district courts in which federal prisoners are confined are simply ill-equipped to discover facts which arose elsewhere, and simply unable to do so on a quantity

---

1. See also Brown v. United States, 311 F.Supp. 325 (N.D.Ga.1970).

2. An informal count shows at least 90 petitions for mandamus regarding credit for "jail time" have been filed in the District thus far this fiscal year. Many involve multiple orders.

3. In the case of concurrent, as opposed to consecutive, state and federal sentences, he apparently may be entitled to such credit for both sentences. See Willis v. United States, 438 F.2d 923 (5th Cir. 1971).

4. A simple ultimate solution would be legislation placing the burden on the sentencing courts or parole board, as the case may be, to ascertain and credit any such jail time upon the federal commitment.

basis. A natural solution would be to refer such claims to the sentencing court in the manner of a § 2255 proceeding as, more often than not, the state custody occurs in the district of federal sentence. However, a large number of such petitions relate to the revocation of parole and the federal commitment results from action by the Board of Paroles rather than a court.

 It is concluded that the problem is basically an administrative one. *Davis* simply engrafts another interpretation into 18 U.S.C.A. § 3568. Under that section, review procedures have been established for all claims for "jail time" to be credited by the Attorney-General. Any federal prisoner may set out his claim through the Prisoner's Mail Box and the claim is investigated and determined by the Office of Legal Counsel, Bureau of Prisons, Attorney-General's Office. In practically all instances, such claims are satisfactorily resolved through these procedures. The same should apply here. Through its nationwide staff of personnel, the Department of Justice is better able to secure the facts and through its concurrent administration of the Board of Paroles may already have a considerable store of information regarding such claims. It follows that these administrative procedures must be utilized in such matters.[5] The courts are already burdened with too many matters which are the responsibility of the Executive Department acting through an appropriate Department head. Such responsibility rests on the Attorney-General under this statute.

Accordingly, the within petition is hereby dismissed without prejudice to the right of the prisoner to follow the administrative procedures described.

It is so ordered.

5. If court review should become necessary, the federal district court in the place of state confinement is best equipped with the necessary powers to resolve any disputed facts. Compare the procedures in regard to state detainers established in

Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969); Rodgers v. State of Louisiana, 418 F.2d 237 (5th Cir. 1969); May v. State of Georgia, 409 F.2d 203 (5th Cir. 1969).