**Paul Howe NOE**

v.

**John GERLAND et al.**

**Civ. No. HM75–605.**

United States District Court,
D. Maryland.

Sept. 25, 1975.

Charles G. Bernstein, Federal Public Defender, and Michael S. Frisch, Asst. Federal Public Defender, Baltimore, Md., for petitioner.

Jervis S. Finney, U. S. Atty., for the District of Maryland, and William McC. Schildt, Asst. U. S. Atty., Baltimore, Md., for respondents.

HERBERT F. MURRAY, District Judge.

The immediate question before this Court is whether it has jurisdiction over the petition for habeas corpus brought by petitioner, Paul Howe Noe. The Court holds that it lacks jurisdiction and orders the case transferred to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1406(a).

STATEMENT OF THE CASE

In April, 1973 petitioner pleaded nolo contendere to one count of fraud by wire, 18 U.S.C. § 1343, for an amount less than $5,000, in the Federal District Court in Midland, Texas. On May 7, 1973, petitioner was sentenced under 18 U.S.C. § 4208(a)(2) by the Honorable D. W. Suttle, United States District Judge for the Western District of Texas. The sentence originally handed down by Judge Suttle was for a term of three

years but was subsequently reduced by Judge Suttle to two years.

Immediately thereafter, petitioner was transferred to Atlanta, Georgia, by the United States Marshal Service to stand trial before the Honorable Charles A. Moye, Jr., on a fifty-three count indictment of conspiracy, fraud by wire, mail fraud and fraudulent inducement into interstate travel (18 U.S.C. §§ 371, 1343, 1341 and 2314, respectively). Petitioner obtained from the Court a directed verdict of acquittal as to all fifty-two substantive counts, leaving only the one count alleging conspiracy. He was found guilty of conspiracy in violation of 18 U.S.C. § 371 and was sentenced by the Honorable Charles A. Moye, Jr. to a three year regular adult sentence. On May 15, 1975, Judge Moye amended and modified the original sentence to three years under the provisions of Section 4208(a)(2).

Shortly after the termination of the petitioner's prosecution in Atlanta, petitioner was removed from the Atlanta Federal Penitentiary to Fort Holabird, Maryland. While at that institution, petitioner provided testimony to the United States Senate in its investigation of security fraud and also cooperated with the United States Attorney General's office in its prosecution of various criminal actions across the country.

On June 20, 1975, petitioner was permanently removed to a place of incarceration located in Fort Worth, Texas, in the Northern District of Texas, as a result of the phasing out of Fort Holabird as a federal detention center.

Petitioner filed a writ of habeas corpus on March 27, 1975, in the United States District Court for the District of Columbia. It was ordered by that court on April 22, 1975, that the case be transferred to this Court. Since that date, the petitioner has been moved to Texas, and the respondent has consequently moved that the petition be dismissed or transferred a second time, this time to the Northern District of Texas. Petitioner has opposed this motion.

Petitioner, in his habeas corpus application, questions the actions taken by the United States Board of Parole in determining his parole status. Petitioner alleges that while incarcerated in the Atlanta Federal Penitentiary he contacted prison officials to request a parole hearing under 18 U.S.C. § 4208(a)(2). He was informed that he must wait, since his stay at the Atlanta Penitentiary was only for the length of the trial before the District Court. He continued to request such a hearing and finally received one on May 28, 1974. However, petitioner alleges that he did not obtain the benefit of an actual hearing in the sense that he was only informed that his case was controversial and was being referred to the National Board for decision. He states that the delay suffered resulted in a delay of fifteen months under his sentences, such delay being "in complete violation of his rights" and resulting "in him effectively doing the entire sentence before even seeing the Parol Board inasmuch as the Petitioner should have come before the Parole Board within the statutory ninety days."

On October 8, 1974, the petitioner received from the Parole Board a "Notice of Action." Petitioner alleges that this notice was based upon illegal "Guidelines" and arbitrarily classified the petitioner with a salient factor scale of seven. There were no reasons given as to how this figure was arrived at, petitioner contends. Petitioner further contends that, in the absence of the "Guidelines" which he claims were illegally adopted as indicated in *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (1974), the Board had no legal alternative but to consider petitioner for parole under the original statutory criteria as described in 28 C.F.R. § 2.18 and that the failure to do so has deprived petitioner of his due process rights.

Petitioner filed an appeal from this Parole Board decision on November 4, 1974. Accompanying this appeal was a letter from Mr. Hugh M. Dorsey III,

attorney, Atlanta, Georgia, contesting the October 8, 1974 Notice of Action. On November 20, 1974, the original decision was affirmed.

Petitioner's application contains several allegations that the procedure followed by the Parole Board denied him his due process rights. He requests the Court to grant the following relief:

(1) Grant a formal hearing pursuant to 28 U.S.C. § 2243;

(2) Grant an order requiring respondents to produce petitioner's prison record, plus all documents, letters, or other materials upon which the United States Parole Board relied in making its determination of October 8, 1974;

(3) Grant an order fixing an immediate date for the hearing and final determination of the within Petition;

(4) Grant his application for a Writ of Habeas Corpus, or in the alternative,

(5) Remand this matter to the United States Parole Board for a determination on the merits of Petitioner's appeal from the Board's decision of October 8th, 1974.

With the above background, the Court will move to consideration of the motion to transfer. It should first be noted that petitioner is currently incarcerated in Fort Worth, Texas, and that his contentions concern the United States Board of Parole, with its headquarters in Washington, D.C. Further, the petitioner is serving sentences imposed by District Courts in Texas and in Georgia. The only connection petitioner has with this Court is that he was incarcerated at Fort Holabird, Maryland for approximately two years, during which time the instant application was filed. The application was filed in this Court on May 12, 1975, after it was transferred here, and has been in this Court for four and one-half months. On June 20, 1975 petitioner was removed from Fort Holabird for permanent incarceration in Fort Worth, Texas. The motion to transfer was filed on July 3, 1975 and petitioner's answer thereto on July 17, 1975.

### Applicable Law

The starting point for a transfer decision is 28 U.S.C. § 2241(a):

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge *within their respective jurisdictions*. . . . (emphasis supplied)

The phrase "within their respective jurisdictions" has not lent itself to easy interpretation. The Supreme Court first considered the meaning of the phrase in *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), a case relied on by both parties herein. In *Ahrens*, petitioners were some 120 Germans who were being held at Ellis Island, New York, for deportation to Germany. Their deportation was directed under removal orders issued by the Attorney General who found that each of them was dangerous to the public peace and safety of the United States. The orders were challenged by petitions for writs of habeas corpus filed in the District Court for the District of Columbia. Respondent Attorney General moved to dismiss because, *inter alia*, petitioners were outside the territorial confines of the District of Columbia. An order dismissing the petition was affirmed by the Court of Appeals and by the Supreme Court.

The Supreme Court stated:

The question at the threshold of the case is whether the words 'within their respective jurisdictions' limit the district courts to inquiries into the causes of restraints of liberty of those confined or restrained within the territorial jurisdictions of those courts. There are few cases on all fours with the present one, the precise question not having frequently arisen in the lower federal courts. But the general view is that their jurisdiction is so

confined. . . . That is our view. We start from the accepted premise that apart from specific exceptions created by Congress the jurisdiction of the district courts is territorial. . . . It is not sufficient in our view that the jailer or custodian alone be found in the jurisdiction.

. . . It would take compelling reasons to conclude that Congress contemplated the production of prisoners from remote sections, perhaps thousands of miles from the District Court that issued the writ. The opportunities for escape afforded by travel, the cost of transportation, the administrative burden of such an undertaking negate such a purpose. These are matters of policy which counsel us to construe the jurisdictional provision of the statute in the conventional sense, even though in some situations return of the prisoner to the court where he was tried and convicted might seem to offer some advantages. (335 U.S. at 190–191, 68 S.Ct. at 1444)

Thus, the *Ahrens* case would seem to require the Court to dismiss the instant application because the petitioner is not confined within the territorial jurisdiction of this Court. This is the first position asserted by the respondent.

On the other hand, the Court notes that the *Ahrens* decision has come under increasing criticism, both from the Supreme Court and from the Court of Appeals of this Fourth Circuit, and its scope has been limited. In *Word v. North Carolina*, 406 F.2d 352 (4th Cir. 1969), a 3–2 decision, the Fourth Circuit considered the meaning of *Ahrens*. There the court held that Virginia prisoners who were also convicted of offenses in North Carolina which lodged detainers against Virginia prison officials should seek habeas corpus relief in North Carolina federal district court and not in Virginia federal district court.

The Court stated:

The custody of the Virginia warden under the authority of the detainer is North Carolina's. He holds the prisoner for North Carolina, not for Virginia. It is a North Carolina judgment that is under attack, and North Carolina's Attorney General, not Virginia's must defend it. The records and witnesses, with the exception of the prisoner, are in North Carolina. Virginia is unconcerned with the outcome, while North Carolina has much at stake. Such considerations require a look far beyond identification of the immediate physical custodian. (at 355)

The Court held that *Ahrens* established not a jurisdictional rule but simply a rule of venue:

. . . it now seems clear that if the words 'within their respective jurisdictions' in § 2241 mean anything more than that the court may act only if it has personal jurisdiction of a proper custodian and the capacity, within its geographic boundaries, to enforce its orders, physical presence of the petitioner within the district is not an invariable jurisdictional prerequisite. It gives way in the face of other considerations of fairness and strong convenience. . . . It is little more than a precatory direction. (at 359)

Although this Court must of course follow the decision in *Word* and consider "fairness and strong convenience," it notes that the instant fact situation differs from that in *Word*. Here, this Court has contact with neither of the parties. The petitioner is in Texas, and the United States Board of Parole is centered in Washington, D.C. In *Word*, the federal court in North Carolina had jurisdiction because a North Carolina judgment was under attack. The instant case, on the other hand, lacks any such connection.

The *Ahrens* case was also limited by the Supreme Court in the recent case of *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). This case was a habeas corpus proceeding brought against a Kentucky court by an Alabama prisoner on the ground that he had been

denied his right to a speedy trial on a Kentucky charge. The Supreme Court held that, although the Alabama petitioner was not within the territorial limits of the United States District Court for the Western District of Kentucky, the Court could entertain the petitioner's application for an order directing the respondent Kentucky court to afford petitioner an immediate trial on a three-year old Kentucky indictment.

The Supreme Court stated:

In terms of traditional venue considerations, the District Court for the Western District of Kentucky is almost surely the most desirable forum for the adjudication of the claim. It is in Kentucky, where all of the material events took place, that the records and witnesses pertinent to petitioner's claim are likely to be found. And that forum is presumably no less convenient for the respondent and the Commonwealth of Kentucky, than for the petitioner. The expense and risk of transporting the petitioner to the Western District of Kentucky, should his presence at a hearing prove necessary, would in all likelihood be outweighed by the difficulties of transporting records and witnesses from Kentucky to the district where petitioner is confined.

(at 493–494, 93 S.Ct. at 1129)

The Court examined the *Ahrens* decision and reasoned that developments since *Ahrens* "have had a profound impact on the continuing vitality of that decision." (at 497, 93 S.Ct. at 1130)

The Court concluded:

In view of these developments since *Ahrens v. Clark*, we can no longer view that decision as establishing an inflexible jurisdictional rule, dictating the choice of an inconvenient forum even in a class of cases which could not have been foreseen at the time of our decision. (at 499–500, 93 S.Ct. at 1132)

This Court, therefore, is not bound by *Ahrens* to dismiss a case simply because the petitioner is not confined within its jurisdiction. The Court must consider the fairness and convenience to the parties. The Court notes again that the parties have no contact with this district except for the fact that the petitioner was at one time confined here. The petitioner was convicted in Texas and is currently incarcerated there. The Texas Warden has access to the records of the United States Board of Parole. The Court finds that the most convenient forum with the most contacts with the action is the Northern District of Texas and orders the instant petition to be transferred to that Court. United States ex rel. Ayala v. Tubman, 366 F.Supp. 1268 (E.D.N.Y.1973).

Accordingly, it is this 25th day of September, 1975 by the United States District Court for the District of Maryland, hereby

*Ordered* that the application for a writ of habeas corpus be transferred to the Northern District of Texas.