Frank S. **PIPER**, Petitioner,

v.

**UNITED STATES of America**,
Respondent.

Civ. No. 13176.

United States District Court
D. Connecticut.

June 30, 1969.

Frank S. Piper, pro se.

J. Daniel Sagarin, Asst. U. S. Atty.,
New Haven, Conn., for respondent.

TIMBERS, Chief Judge.

The above named petitioner, incarcerated at the Federal Correctional Institution at Danbury, Connecticut, under sentence imposed by the United States District Court for the District of Massachusetts, seeks habeas corpus relief, pursuant to 28 U.S.C. § 2241, against detainers, warrants and indictments lodged against him by various state authorities.[1] For the reasons set forth below, the Court, on the present state of the record, denies petitioner's application.

## I.  QUESTION PRESENTED

The question before the Court is exceedingly narrow: does the doctrine of Smith v. Hooey, 393 U.S. 374 (1969), permit an individual incarcerated in a federal institution within this District to seek habeas corpus relief against detainers lodged against him by state authorities, such authorities being without the jurisdiction of this Court? The Court does not address itself to the merits of petitioner's allegations; for present purposes his allegations are accepted as true, and the Court assumes, *arguendo*, that petitioner would be enti-

---

1. Records at the Correctional Institution reveal 18 detainers lodged against petitioner, all relating to check passing. The states involved are Massachusetts (10 detainers), New York (2), Kentucky, Maine, New Hampshire, Nevada, Vermont and Wisconsin. However, the charge in Vermont and one charge in Massachusetts apparently have been dismissed; counsel has been appointed to represent petitioner in 3 other actions (New Hampshire, New York and Massachusetts). The remainder of the jurisdictions either have ignored or denied petitioner's repeated (approximately 73) letters and motions for a speedy trial.

tled to some relief under the rationale of Smith v. Hooey, *supra*.

## II.  PETITIONER'S CLAIM

The facts can be stated briefly.  Petitioner is currently serving a five year federal sentence at the Federal Correctional Institution at Danbury.  Upon its termination he must begin serving a five year consecutive state sentence. Prior to November 27, 1966 (date of imposition of the federal sentence) various detainers, warrants and indictments were lodged against petitioner by various state authorities.  Although petitioner alleges that he requested that these authorities bring him to immediate trial, and in fact has moved for appointment of counsel and for dismissal of the detainers, his motions have been denied or ignored.  Copies of papers sent to the state authorities, attached to the instant application, reveal that he disclosed to the state authorities his current confinement, the general practice under which he could be made available for prosecution by the states,[2] and the legal authorities upon which he based his right to a speedy trial.[3]  Petitioner re-

cites that the existence of the detainers prevents his becoming a trusty, reduces his chances for parole, and diminishes his eligibility for participation in federal rehabilitation programs such as work release and outside school and religious programs.

## III.  AVAILABILITY OF HABEAS CORPUS RELIEF

■   The fact that petitioner may not technically be in custody by virtue of the detainers of which he complains is not dispositive of his claim.  In Peyton v. Rowe, 391 U.S. 54 (1968), the Court held that a prisoner serving consecutive sentences would be deemed in custody under either of them within the meaning of 18 U.S.C. § 2241(c)(3).[4]  Here, as distinguished from the "speedy trial" cases cited in note 3, *supra*, petitioner is seeking dismissal or immediate trial of pending criminal charges and not, as in those cases, directly or collaterally attacking, because of the pre-trial delay, convictions obtained as the result of trial of those charges.  Under the authority of *Peyton*, this Court holds that petitioner may make such early attack and

---

2.  18 U.S.C. § 4085 provides as follows:
    "(a) Whenever any federal prisoner has been indicted, informed against, or convicted of a felony in a court of record of any State or the District of Columbia, the Attorney General shall, if he finds it in the public interest to do so, upon the request of the Governor or the executive authority thereof, and upon the presentation of a certified copy of such indictment, information or judgment of conviction, cause such person, prior to his release, to be transferred to a penal or correctional institution within such State or District.
    If more than one such request is presented in respect to any prisoner, the Attorney General shall determine which request should receive preference.
    The expense of personnel and transportation incurred shall be chargeable to the appropriation for the 'Support of United States prisoners.'
    (b) This section shall not limit the authority of the Attorney General to transfer prisoners pursuant to other provisions of law."

3.  In addition to Smith v. Hooey, *supra*, petitioner relied upon Pitts v. North Carolina, 395 F.2d 182 (4 Cir. 1968); Needel v. Scafati, 289 F.Supp. 1006 (D. Mass.1968); and Commonwealth v. McGrath, 348 Mass. 748, 205 N.E.2d 710 (1965).  Other authorities in support of petitioner's position include People v. Winfrey, 20 N.Y.2d 18, 281 N.Y.S.2d 823, 228 N.E.2d 808 (1967); Richardson v. State, 91 Idaho 555, 428 P.2d 61 (1967); People v. Piscitello, 7 N.Y.2d 387, 198 N.Y.S.2d 273, 165 N.E.2d 845 (1960).  But cf. State v. Kostura, 98 Ariz. 186, 403 P.2d 283 (1965) (mandamus by federal prisoner denied on ground there is no affirmative duty compelling state officials to utilize § 4085; court suggested that petitioner might move to dismiss when brought to trial.)

4.  See Hammond v. Lenfest, 398 F.2d 705, 710–11 (2 Cir. 1968), for a discussion of the expansion of the custody requirement.

need not await future trial on those charges.

## IV. EXHAUSTION OF STATE REMEDIES

█ The mere possibility of successful application to the courts of the state from which the detainers issued is insufficient to preclude federal habeas corpus relief, where petitioner has thoroughly exhausted his state remedies and there is no substantial state interest in ruling again on his case. Roberts v. LaVallee, 389 U.S. 40 (1967) (per curiam), *vacating and remanding* 373 F.2d 49 (2 Cir.). Here petitioner has attempted, through well drafted and articulate papers, to obtain relief in the state jurisdictions. Such attempts have been ignored or rejected. Although he has not appealed these state actions or inactions, dismissal in order to compel petitioner further to pursue this seemingly futile course would appear inequitable. This case is distinguishable from United States ex rel. Figueroa v. McMann, 411 F.2d 915 (2 Cir. 1969) (per curiam), which in turn distinguished *Roberts* because of the development of a materially different claim and stronger evidentiary case than had been presented to the state forum. This was held to justify dismissal of the petition in favor of resolution by the state court, which had agreed to provide a prompt hearing on the issues as soon as a new coram nobis application was made.[5]

Notwithstanding *Figueroa, Roberts* has been applied in this Circuit to require consideration of an exhausted claim even though an unrelated claim is awaiting adjudication in the state courts[6] and where new grounds urged were not presented to the lower state tribunal by a petition for a rehearing, although they were raised on appeal from the lower tribunal.[7]

## V. JURISDICTION

█ This Court recognizes that habeas corpus "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongful restraints on their liberty." Jones v. Cunningham, 371 U.S. 236, 243 (1963). Yet certain prerequisites remain without whose satisfaction the writ must not issue. For example, the respondent must be a person having immediate custody of the petitioner,[8] and he must be amenable to the jurisdiction of the court so that the orders of the court can be enforced. It is on this latter ground that the Court places its refusal to order issuance of the writ or to hold an evidentiary hearing. Petitioner's application, insofar as it is directed against the United States and the appropriate officials of the Federal Correctional Institution at Danbury, is derivative in nature; it seeks relief against the detainers lodged against him by other jurisdictions. While one court has held that the appropriate district in which to seek relief in a situation such as this is the district of custody, since the officials in that district have chosen to impose the consequences allegedly

5. See also United States ex rel. Boodie v. Herold, 349 F.2d 372 (2 Cir. 1965) (exhaustion under 18 U.S.C. § 2254 not fulfilled where claims were based on matters not before state court); United States ex rel. Scarnato v. Fay, 347 F.2d 424 (2 Cir. 1965); and United States ex rel. Kessler v. Fay, 232 F.Supp. 139, 142 (S.D.N.Y.1964), cited in *Figueroa, supra,* at 916.

6. United States ex rel. Levy v. McMann, 394 F.2d 402 (2 Cir. 1968); United States ex rel. Sniffen v. Follette, 393 F.2d 726 (2 Cir. 1968).

7. United States ex rel. Jefferson v. Follette, 396 F.2d 862 (2 Cir. 1968).

8. See United States ex rel. Brown v. Jacobs, Civil Action No. 12954 (D.Conn. 1969) (unreported) (application denied where respondent was petitioner's bondsman and did not have custody of petitioner).

flowing from the detainer,[9] and there is abundant authority supporting the habeas corpus jurisdiction of the court in the district of custody to reexamine a conviction of another state where the state of custody has imposed second offender sanctions in reliance thereon,[10] the instant petition is distinguishable.

Although petitioner claims deprivation of rights and privileges from the existence of the detainers, the fact that he is already under a five year consecutive state sentence renders without effect any relief which this Court might grant. The fundamental claim behind this petition is the right to a speedy trial, under the rationale of Smith v. Hooey, *supra*. It is the rectification of such alleged deprivation which this Court is powerless to provide. While theoretically the Court, assuming after proper hearing that petitioner established the unconstitutional delay, might order the appropriate officials at Danbury to "quash" the detainers as constitutionally invalid, such order would not be effective against the states which issued the detainers which, unless impelled by a benevolent spirit, undoubtedly would not appear in these proceedings. Once petitioner's term at Danbury terminated, he would be committed to the custody of state officials to commence service of his second sentence and the detainers could be reimposed against him. Rather than attempt to provide piecemeal, inadequate and unenforceable relief, and with the confidence that relief through mandamus, as in Smith v. Hooey, *supra*, if pursued diligently through the respective state court systems,[11] would result in diligent efforts to bring petitioner to trial or, in the alternative, in dismissal of the detainers, the Court declines to issue the writ on the present state of the record. Denial of the instant petition, however, is without prejudice: these proceedings are to be kept open pending further notification to the Court by the appropriate officials at Danbury of the results of any subsequent mandamus proceedings instituted by petitioner and with leave to petitioner in due course to file an appropriate amended petition herein. It is in petitioner's own interest to attempt, once more, to obtain redress through such procedures, and to appeal any denials thereof. Under the doctrine of Smith v. Hooey, *supra,* the respective state authorities can be expected to take appropriate action.

## ORDER

ORDERED as follows:

(1) That petitioner's application for a writ of habeas corpus be, and the same hereby is, denied, but without prejudice to its reconsideration by the Court in light of the factors discussed above.

(2) That all papers in this action may be filed without payment of the statutory fees.

9. Ashley v. Washington, 394 F.2d 125 (9 Cir. 1968). In *Ashley*, at 126 n. 2, petioner asserted similar detrimental effects flowing from the Washington detainer on his Florida incarceration, including maximum custody, ineligibilty for parole or for trusty status, less desirable job assignments, and unavailability of pre-release benefits. *Ashley*, if followed, would render futile an attempt at habeas corpus in the issuing district. See also United States ex rel. Van Scoten v. Pennsylvania, 404 F.2d 767 (3 Cir.

1968), following *Ashley*, and cases cited therein.

10. See, e. g., United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2 Cir.) (en banc), *cert. denied*, 377 U.S. 998 (1964) (New York prisoners serving increased sentences as second offenders by habeas corpus may attack their out of state convictions.)

11. Including appeals from any denials in the lower courts.