Michael VARALLO, Petitioner,

v.

STATE OF OHIO, Respondent.

Griffin T. WILLIAMS, alias Willy T. Williams, Petitioner,

v.

STATE OF GEORGIA, Respondent.

Tommy L. WOLFENBARGER, Petitioner,

v.

STATE OF TENNESSEE, Respondent.

Civ. Nos. 1268–1270.

United States District Court,
E. D. Texas,
Texarkana Division.

April 21, 1970.

## MEMORANDUM OPINION AND ORDER

FISHER, Chief Judge.

Leave to proceed in forma pauperis is granted, and the Clerk will file each petition without prepayment of costs as an application for writ of habeas corpus.

Each of these petitions presents a similar fact situation: an inmate of the Federal Correctional Institution at Texarkana, Texas, seeks to attack detainer warrants which have been filed against him by authorities of another state. The United States Supreme Court has held, in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969), that a State may not ignore the request of a criminal accused for a speedy trial because he is incarcerated in another jurisdiction but must make a reasonable effort to bring him to trial. We have no doubt that each of these petitioners has a right secured by the federal constitution to a speedy trial on the charges subject of the detainers of which they complain. Furthermore, we

think it is clear that the habeas jurisdiction of a federal district court may properly be invoked in order to secure such right. The writ exists to protect individuals "against erosion of their right to be free from wrongful restraints upon their liberty." Jones v. Cunningham, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963). A petitioner need not be technically in custody by virtue of the warrant he seeks to attack. See Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). It is held that a prisoner may attack previous out-of-state convictions by habeas corpus where he is serving an increased sentence as a repeat offender. See, e. g., United States ex rel. Durocher v. LaVallee, 330 F.2d 303 (2nd Cir. 1964), cert. den. 377 U.S. 998, 84 S.Ct. 1921, 12 L.Ed.2d 1048 (1964). And it is true that the existence of detainers may deprive a prisoner of rights and privileges, such as eligibility for parole or trusty status and other prerelease benefits. See Ashley v. Washington, 394 F. 2d 125, 126 n. 2 (9th Cir. 1968). But the practical problems inherent in fashioning a remedy designed to afford effective relief under the circumstances presented by these petitions have prompted the Court to reconsider the propriety of its entertaining applications of this nature.

The obvious difficulty inheres in the fact that the named respondents are beyond the territorial jurisdiction of this Court. While the petitioners are incarcerated within this district, any action directed against their custodian, the warden of the Federal Correctional Institution at Texarkana, would be purely derivative in nature. The fundamental claim asserted is the right to a speedy trial, which the Court is powerless to provide. Piper v. United States, 306 F. Supp. 1259 (D.Conn.1969). While the Court might order the detainers vacated or returned, there is no assurance that they might not be reimposed should the prisoners later be transferred to another penal institution beyond the jurisdiction of this Court. The relief which the Court is authorized to provide would be "piecemeal, inadequate, and unenforceable," Piper v. United States, *supra*. Under these circumstances, we are reluctant to issue the writ. "If petitioner seeks * * * declaratory relief against the potentiality of future restraint * * * the Great Writ may not be used for such purpose." Moore v. United States, 339 F.2d 448 (10th Cir. 1964).

We are led to inquire whether habeas jurisdiction may lie in another United States court better suited to redress the constitutional deprivations complained of in these petitions. Title 28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." The Supreme Court long ago held, in Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), that this phrase means the district in which the petitioner is detained or confined when the petition is filed. But in broadening the availability of the writ in recent years, see e. g., Peyton v. Rowe, *supra*, Jones v. Cunningham, *supra*, the Supreme Court has sanctioned a notion of "constructive custody," a concept designed to assure that the writ does not become "a static, narrow, formalistic remedy." Jones v. Cunningham, *supra*, at 243, 83 S.Ct. 373. We presume that this concept is available to aid this Court in coping realistically with the situation confronting us. We are strengthened in this conviction by the decision of the Court of Appeals for the Fourth Circuit, sitting en banc, in Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969). In that case petitioners were Virginia prisoners who were also convicted of offenses in North Carolina, which lodged detainers with the Virginia prison officials. One petitioner brought his habeas action in the United States District Court for the Eastern District of North Carolina—in the demanding state; two others brought their actions in the Eastern District of Virginia—in the detaining state. The Court held that all of the actions should

have been brought in the demanding state.

The reasoning of the Court in *Word* centered on the "dual" nature of the Virginia warden's authority to detain the prisoners in that he would continue to detain by virtue of the North Carolina warrants even after the Virginia commitments had expired. Furthermore, the "duality of the warden's authority" had certain practical consequences, such as those discussed, *supra,* so that by virtue of the detainers the warden held the prisoners "with a heavier hand." The Court concluded that the prisoners were in custody within the meaning of § 2241(c) (3) under the North Carolina detainer as well as the Virginia sentence.

> "The custody of the Virginia warden under the authority of the detainer is North Carolina's. He holds the prisoner for North Carolina, not for Virginia. It is a North Carolina judgment that is under attack, and North Carolina's Attorney General, not Virginia's must defend it. * *"
> At 355.

After an extended analysis of the relevant policy considerations and case law, the Court concluded as follows:

> "From all of these cases it now seems clear that if the words 'within their respective jurisdictions' in § 2241 means anything more than that the court may act only if it has personal jurisdiction of a proper custodian and the capacity, within its geographic boundaries, to enforce its orders, physical presence of the petitioner within the district is not an invariable jurisdictional prerequisite. It gives way in the face of other considerations of fairness and strong convenience. It will not be applied to leave one in prison without an effective remedy, to limit the reach and usefulness of related writs authorized by the same statute or to require the dismissal of proceedings once they have been properly begun. It is little more than a precatory direction, as

the author of the majority opinion in Ahrens v. Clark explained in Hirota v. MacArthur [338 U.S. 197, 69 S.Ct. 197, 93 L.Ed. 1902 (1948)]." At 359.

The *Word* holding has been subjected to criticism by the district court in Hearne v. Washington State Parole Board, 300 F.Supp. 536 (E.D.Wash. 1969). In that case the petitioner was in custody of the State of Kansas and sought to attack a conviction and unserved sentence outstanding against him in Washington state, which he claimed tended to extend, intensify or heighten his Kansas custody. Relying upon the Ninth Circuit's decision in Ashley v. Washington, *supra,* the Court held that

> "* * * any fictitious or constructive custody of Hearne by the Washington authority has been superseded by the real and actual custody of him by the Kansas authority. Paraphrasing Ashley further, if the Washington conviction and sentence has any effect in Kansas, that is only because Kansas chooses to give it that effect. If that effect extends and heightens the Kansas custody and deprives Hearne of any constitutional right, the federal court in which Hearne should proceed is that of the District of Kansas." 300 F.Supp. at 538.

■ We think that this is persuasive argument in support of the habeas jurisdiction of the federal district court sitting in the detaining state. The Court in *Word* did not hold that the district of actual custody had no jurisdiction to review the claims presented. However, it was recognized that, due to lack of jurisdiction over the respondent state authorities, no effective post-conviction review of the prisoners' speedy trial claims could be had in the district of detention. We think that the court in the detaining district possesses the necessary "in rem" jurisdiction to act upon the detainers themselves and to order them expunged from the prison records. See Lawrence v. Blackwell, 298 F.Supp. 708 (N.D.Ga. 1969). Furthermore, the Ninth Circuit has held, in George v. Nelson, 410 F.2d

1179 (9th Cir. 1969), that the warden with actual custody of the prisoner may be regarded as agent for the authorities in the demanding state and may be called upon to defend the habeas action or to pass the matter on to the out-of-state authorities to answer in his name. We do not overlook these possible courses of action but merely point out that both carry the fundamental defect that they are not adapted to insure the full and effective relief to which a petitioner would be entitled should he show cause for issuance of the writ.

We do not hold, therefore, that this Court lacks all potential jurisdiction of these petitions; but we are of opinion that for this Court to entertain such applications is both a waste of the Court's time and an exercise in futility on the part of the petitioners. Accordingly, the Court will henceforth decline to entertain habeas petitions by prisoners who seek to attack detainers filed by authorities resident in foreign jurisdictions unless it is shown that application for relief has been made to the federal district court sitting in the demanding state.

■ The Court holds hereby that a federal prisoner's habeas action attacking a conviction in another state which underlies a detainer filed with his keeper is properly brought in the federal district court sitting in the demanding state, and as a matter of sound discretion this Court will decline to exercise its own jurisdiction and will dismiss these petitions. However, the Court does not rest its decision upon this ground alone. We believe that the doctrine of exhaustion of available state remedies is viable and applicable in this context. It was aptly stated by the Court in Smith v. Londerholm, 304 F.Supp. 73 (D.Kan. 1969), that,

"Certainly there is nothing in Smith v. Hooey which would excuse [petitioner] from the requirement that he proceed in an orderly manner through the courts of the State of Kansas before seeking the aid of any federal district court." At 76.

Each of these petitioners alleges that some kind of application for state court relief has been previously made. It does not, however, appear that this procedure has been fully and properly explored by any. Under similar circumstances the Court in Piper v. United States, *supra*, concluded that, "It is in petitioner's own interest to attempt, once more, to obtain redress through such procedures, and to appeal any denials thereof." 306 F. Supp. at 1262. It is particularly desirable that these petitioners press for relief through application for writ of mandamus addressed to the state court of appropriate jurisdiction because such court, unlike this one, is empowered to provide rapid and full relief. State courts are, of course, bound by the constitutional mandate contained in Smith v. Hooey, and in that light should act appropriately upon these petitions.

■ It is standard federal habeas law that a petitioner should ordinarily be required to exhaust available state remedies, including any right of appeal from denial of collateral relief in state court. See e. g., Key v. Holman, 346 F. 2d 153 (5th Cir. 1965). Upon denial of relief in the highest state court in which a review may be had, a petitioner may seek certiorari in the United States Supreme Court. We recognize that the requirement that a petitioner take an application for certiorari as a precondition to proceeding in federal habeas corpus has been abolished by the Supreme Court. Fay v. Noia, 372 U.S. 391, 436, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). We do not propose to resurrect it but merely observe that the procedure is available and has many times been successfully employed by petitioners asserting their rights under Smith v. Hooey. The rule of exhaustion "is not one defining power but one which relates to the appropriate exercise of power." Bowen v. Johnston, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L. Ed. 455 (1939). Under the circumstances presented by the cases at bar, we deem it appropriate and desirable, with a view to the petitioners' own interests, to afford them the opportunity to pur-

sue this course, the path having been pointed out to them. Accordingly, this Court will not henceforth entertain habeas petitions by prisoners who seek to attack detainers filed by authorities resident in foreign jurisdictions unless it is shown that mandamus relief has been sought in the appropriate state courts and that appellate procedures available under state law have likewise been exhausted. In the cases at bar the Court has received no satisfactory showing that this has been done.

For the reasons stated each of these petitions will be dismissed without prejudice to a renewal of same after the petitioner has availed himself of such remedies as the laws of the demanding state may afford and has made application for habeas relief to the federal district court sitting in the demanding state. The Clerk will furnish a copy of this Opinion to each petitioner and to the attorneys general of each named respondent state.

It is so ordered.