Eugene Loyd **WEBB**, Appellant,

v.

Dr. George **BETO**, Director, Texas Department of Corrections, Appellee.

No. 21944.

United States Court of Appeals
Fifth Circuit.

May 31, 1966.

Donn C. Fullenweider, Houston, Tex., for appellant.

Eugene Loyd Webb, pro se.

Sam R. Wilson, Asst. Atty. Gen., Houston, Tex., Waggoner Carr, Atty. Gen. of Texas, Hawthorne Phillips, First Asst. Atty. Gen., Stanton Stone, Executive Asst. Atty. Gen., Howard M. Fender, Asst. Atty. Gen., Allo B. Crow, Jr., Asst. Atty. Gen., Austin, Tex., for appellee.

Before RIVES, WISDOM and GEWIN, Circuit Judges.

GEWIN, Circuit Judge:

This is an appeal from the denial of a writ of habeas corpus sought by a Texas state prisoner pursuant to 28 U.S.C.A. §

2241 et seq. in the United States District Court for the Southern District of Texas. Appellant, Eugene Loyd Webb, was convicted by a jury in Tarrant County, Texas, of murder with malice for which he is now serving a sentence of not less than two [1] years nor more than life imprisonment. A plenary hearing was held on appellant's petition during which he was present and represented by counsel.

Appellant contends the District Court committed the following errors: (1) refusing to grant his motion for change of venue pursuant to 28 U.S.C.A. § 1404 (a);[2] (2) holding a hearing on his petition without a full transcript or statement of facts from his state court trial; (3) failing to find that (a) the State unlawfully suppressed evidence at the trial by refusing to provide the defense with statements of witnesses taken prior to and during his examining trial;[3] (b) he was tried before a biased state judge in violation of his rights under the Fourteenth Amendment; (c) the State refused to furnish him, an indigent, with an attorney and a transcript or adequate statement of facts in order to perfect an appeal, in violation of rights under the Sixth and Fourteenth Amendments; (d) he was denied his right to counsel before and during his examining trial, as guaranteed by the Sixth and Fourteenth Amendments.

The facts may be summarized as follows: On December 29, 1958, appellant was arrested in Fort Worth, Texas, for the offense of murder. The next day he was questioned by police officers who requested permission to search his home. Appellant agreed to the search on the condition he be allowed to accompany them.[4] While at home, he talked by telephone with a Mr. Aultman, an attorney and law partner of appellant's regular attorney, Randall Riley. Mr. Aultman promised to inform Mr. Riley of appellant's arrest and desire to have counsel.

On January 8, 1959, appellant was taken before a Justice of the Peace in Tarrant County for an examining trial. Mr. Riley came to the proceeding, but informed the court he was there solely as a "spectator."[5] Appellant pleaded "not guilty" during the examining trial. He did not testify, waive any of his rights, or undertake a cross-examination of witnesses. He was bound over to the Grand Jury, and bail was set at $5,000.[6] Two or three days later he formally employed Mr. Riley as his attorney.

---

1. The State's brief asserts that the term is not less than five years. The record before us purports to contain a copy of the state court sentence, which shows the sentence to be "not less than 2 years nor more than life."

2. "§ 1404(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

3. During the plenary hearing, counsel for the petitioner referred to this proceeding several times as " * * * the preliminary hearing, the bond hearing or examining trial whatever it was * * *." The docket sheet of the Magistrate before whom Webb appeared indicates only that it was determined that the evidence was sufficient to require him to appear before the District Court of Tarrant County, Texas, and ordered that Webb be admitted to bail in the sum of $5,000. As to examining trials, see generally Pointer v. State of Texas, 380 U.S. 400, 402, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

The United States District Court found as a fact that the primary purpose of "an examining trial" in Texas is to determine whether the evidence is sufficient to require the accused to be bound over to await the action of the grand jury and to fix the amount of bail, and that such examining trials are often waived by the accused.

4. Webb claims he agreed in order to call his attorney. The State maintains he agreed in order to pick up clothing.

5. The Justice of the Peace attests that Webb answered "yes" when asked if he had an attorney, but Mr. Riley answered "no" when asked if he was the attorney. Mr. Riley stated that he was only a spectator at the trial. He heard and observed all of the proceedings.

6. The District Court found that bail in the amount of $5,000 was "an extremely reasonable bond in a case of this nature."

On January 20, 1959, appellant was indicted by the Grand Jury for the capital offense of murder with malice. He was brought to trial on the indictment four different times.[7] During the first trial, the court declared a mistrial because certain evidence submitted to the jury was ruled inadmissible and prejudicial. Three weeks after the mistrial, the second trial began. Another mistrial was declared during selection of the jury because of an article appearing in a local newspaper attributing a statement to the trial judge to the effect that a life sentence for appellant in exchange for a plea of guilty would be a "fair deal" for all concerned. The third trial took place two months after the second mistrial; appellant was found guilty and sentenced to death. Six weeks after that conviction, a motion for new trial was granted because of jury misconduct and the admission of improper evidence. Approximately six weeks later, the fourth and final trial was held; the jury convicted appellant and fixed his punishment at life imprisonment.

Appellant's attorney, Mr. Riley, filed another motion for a new trial;[8] but it was withdrawn shortly thereafter. Mr. Riley then withdrew from the case, and no appeal was taken.

In his petition, appellant alleges that except for his brief conversation with Mr. Aultman, he was held incommunicado by the police authorities until the examining trial, even though he persistently asked to see his attorney. Furthermore, he claims that after his conviction and Mr. Riley's withdrawal from the case, he wrote numerous requests to the trial judge asking for an attorney and transcript so he could take an appeal *in forma pauperis*. Such requests, he maintains, were never answered, and that is why no appeal was taken. The State specifically denies each of these allegations.

Before the plenary hearing was held in the United States District Court, the court entered a preliminary memorandum and order in accordance with the suggestion contained in our case of Baker v. Ellis (5 Cir. 1952) 194 F.2d 865 at 866, wherein we stated that " * * * the petitioner should have the opportunity of developing a record upon which his rights might be intelligently and certainly determined and reviewed." The preliminary order provided: "that petitioner raise by amendment or in his reply, if not heretofore raised in his current petition, any and all grievances or claims he may have related to denial of due process of law, equal protection of law, or any constitutional right, privilege or immunity he may have or claim." Petitioner was allowed to proceed without paying or giving security for the costs of court, and counsel was appointed for him. The respondent was directed to file an answer and to serve a copy upon the petitioner. After the plenary hearing, during which the defendant was competently represented by experienced counsel, the trial court entered detailed findings of fact and conclusions of law in which it denied relief.

The record reflects that the appellant was not a stranger to criminal court proceedings. He was a mature individual at the time of his trial and had been convicted of three felonies on prior occasions.[9] He was represented in the state

---

7. There is some confusion in the record as to the number of trials in the state court, some of the testimony indicating 4 and other testimony indicating 5. The United States District Court concluded: "petitioner was brought to trial on the indictment four or five times."

8. A procedural step in taking an appeal in Texas.

9. The following are some typical answers given by appellant on the habeas corpus hearing:
   (a) As to searching his home:
   "Well, they asked me if I'd let them search my home, and I knew there was nothing in my home that would incriminate me, and I told them,

court trials by able and competent counsel, and he finally received the sentence which he undertook to obtain by agreement with the prosecution, but which the prosecution rejected before his trial in the state court.[10] As stated, he was represented by counsel during the plenary hearing on his habeas corpus petition, and on his appeal to this Court.

## I

Appellant urges that the District Court erred in denying his motion for change of venue to the Northern District of Texas pursuant to 28 U.S.C.A. § 1404(a). He maintains that the "interest of justice" required such transfer because there were numerous witnesses residing in Fort Worth who were necessary to a just determination of the claims in his petition, but were either unable or unwilling to travel to the Southern District for a hearing. The trial judge made it clear that in a habeas corpus proceeding it was permissible to obtain affidavits from witnesses and that such affidavits would be admitted in evidence. Some affidavits were actually admitted in evidence. The appellant was also given time after the plenary hearing in which to obtain counter-affidavits as to certain facts.

■ Section 1404(a) explicitly states that a civil action may only be transferred to "any other district or division where it might have been brought." 28 U.S.C.A. § 2241(a) authorizes district courts to grant writs of habeas corpus "within their respective jurisdictions."[11] This section has been held to be jurisdictional and to require that the writ be issued only when the person detained is *within* the territorial jurisdiction of the court. Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); Whiting v. Chew, 273 F.2d 885 (4 Cir. 1960). Since appellant was confined within the Southern District of Texas, he could not have brought his petition in the Northern District. Therefore, he cannot have his case transferred there.

'I'll let you search my home if you'll let me call my lawyer.' "

(b) As to the reason for granting the first mistrial:
"Q. The first mistrial was granted and what was the reason for it, do you recall?
"A. Due to inadmissible evidence getting before the jury.
"Q. All right, sir. Then the Court took another jury and you began again, is that correct?
"A. Yes, sir.
"Q. All right. And another mistrial resulted, is that correct?
"A. Yes, sir; due to publicity in the newspaper about a statement the Judge had made."

(c) As to motion for a new trial:
"Q. All right, sir. Well, tell us about that.
"A. Well, the case was called again. I don't recall the date and that's when I went to trial and was found guilty and assessed the death penalty, and upon motion for new trial, the motion was granted and a new trial was granted.
"Q. Do you recall the grounds for the motion?
"A. Well, there was two, as I recall. The inadmissibility of the evidence that the Judge had rulled

[sic] inadmissible before was allowed in this trial where I received the death penalty, and the other grounds was the—I believe it would be called jury misconduct.
"Q. All right, sir. Then you were granted the new trial?
"A. Yes, sir.
"Q. You were tried again and this was the fourth trial?
"A. I believe the fourth or fifth. Anyway, this last one I received a life sentence on."

10. The United States District Court found as a fact:
"b. Petitioner, represented by both Mr. Riley and Mr. Aultman, offered to plead guilty in exchange for a life sentence,
"c. the District Attorney refused to accept the offer and insisted on trial,"

11. Title 28 U.S.C.A. § 2241(a) provides:
"(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had."

Shepherd v. Beto, (S.D.Tex.1964) 227 F. Supp. 806.

## II

Appellant further maintains that the District Court erred in proceeding with the hearing without first obtaining a full transcript or statement of facts from the state court where he was tried. We have carefully examined all of appellant's claims and scrutinized the record of the plenary hearing to see whether a transcript was essential to a fair examination of the issues. We conclude that while it might have been helpful to have had a full transcript of the trial available during the hearing, it was not necessary, since none of appellant's claims would have been resolved by facts appearing in the state court transcript. Under ordinary circumstances, a plenary hearing on a habeas corpus petition is more than an ample substitute for a trial record. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963);[12] People ex rel. Jennings v. Ragan, 358 U. S. 276, 79 S.Ct. 321, 3 L.Ed.2d 296 (1959). We also consider of substantial importance the fact that the record of the hearing shows that appellant made no request of the United States District Court for a transcript, nor mentioned the fact that it would be helpful to his cause. The question of proceeding with a hearing without a transcript was first raised on this appeal.

## III

Appellant asserts that the State unlawfully suppressed evidence by refusing to furnish the defense with statements taken from witnesses prior to indictment. No evidence, beyond mere assertion, was presented to support this claim. There does appear in the record an affidavit from a Deputy Clerk of the court in which appellant was convicted stating that the records of the court fail to reveal any attempt by appellant or his counsel to obtain any statements of witnesses either before, during or after trial. Appellant's counsel was given time after the hearing to obtain a counter-affidavit if possible. None was obtained. This, coupled with the fact that appellant was represented during every trial by very able counsel who undoubtedly knew the proper procedure for obtaining such statements, provided the District Court with ample evidence on which to base its finding that no suppression of evidence occurred.

## IV

Appellant further maintains he was denied due process because he was tried before a biased state judge. To support this contention he presented a newspaper clipping in which it was reported that the trial judge felt appellant should accept a life sentence in return for a plea of guilty. Both attorneys for the prosecution [13] gave sworn statements that the trial judge made no such comment.[14] Furthermore, the state court gave appellant *four different trials*. These facts alone preclude our overruling the District Court as "clearly erroneous." In fact, we conclude that appellant was given an ample share of fair treatment by the state trial judge.[15]

---

12. The Court said in Townsend at 372 U.S. 319, 83 S.Ct. 760, " * * * there may be cases in which it is more *convenient* for the district judge to hold an evidentiary hearing forthwith rather than compel production of the record. *It is clear that he has the power to do so.*" (Emphasis added.) Most of the cases in this area deal with the *necessity* of a hearing in the *absence* of a complete trial court record. Cf. Allison v. Holman (5 Cir. 1963) 326 F.2d 294.

13. One of whom is now a state criminal court judge.

14. In direct answer to a question as to the prejudice claimed, the appellant testified as follows:
"A. The only thing that I could consider his acts of being prejudiced to me, is the action, the fact that he overruled his previous stand on the admissibility of evidence and allowed the same evidence to be introduced at this trial against me."

15. The state trial judge was dead at the time of the plenary hearing in the United States District Court.

## V

■■ Appellant also contends he was denied his right to counsel for the purpose of perfecting an appeal from the state court conviction by the refusal of the trial court to respond to his requests to furnish him, an indigent, with an attorney. There is no longer any doubt that upon request the State must provide an indigent with counsel for a direct appeal. Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811 (1963). Appellant admits that he has no evidence to support his claim, and in our opinion there were factual circumstances present which serve to defeat it. The appellant claims to have written letters requesting assistance in perfecting an appeal. The state court records fail to show that any attempts were made by appellant to obtain counsel for an appeal, or that the alleged requests were ever received by the Court. Furthermore, appellant's privately-retained counsel filed a motion for a new trial and then deliberately withdrew it. This leads us to believe that there was a *decision to drop the appeal,* in view of the fact that appellant received a life sentence after having been given the death penalty upon a previous trial. The United States District Judge found that the appellant offered to plead guilty in exchange for a life sentence, but the state district attorney refused to accept the offer and insisted on trial. Thus we conclude that the District Court was correct in finding that he waived his right to appeal and thus waived his right to counsel to perfect the appeal.

## VI

■ Finally, the appellant asserts that he was denied the right to counsel from the time of his arrest until after the examining trial. It appears clear that the appellant's regular attorney, Mr. Riley, was formally retained by the appellant two or three days after the examining trial. We have already discussed the nature of the examining trial. It took place approximately 9 days after arrest. The appellant was allowed to contact an attorney the next day after his arrest. At the time he fully understood that the charge pending against him was murder and he so advised the attorney. The attorney contacted by the appellant, Mr. Aultman, promised to inform Mr. Riley of his telephone call. No confession was ever obtained or used. The record fails to disclose that anything transpired after arrest and before counsel was formally employed which prejudiced the appellant. At the examining trial the appellant stated to the Magistrate that Mr. Riley was his attorney. Mr. Riley informed the Magistrate that he did not represent the appellant but was present as a spectator. He did not ask for counsel and did not seek a postponement of the hearing in order to obtain counsel. Mr. Riley was present and observed and heard the entire proceedings. The United States District Court concluded that nothing occurred at the examining trial which in any way prejudiced the appellant's defense in the trial of his case on the merits. Although represented by capable, efficient, and experienced counsel during the state court trial, there is no evidence that the appellant was prejudiced at the examining trial [16] or that prejudice was established during the state court trial. The facts here established clearly show that there has been no violation of the principles set forth in White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193; Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114; or Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).[17] We agree with the conclusion

---

16. In its findings the District Court informs us it is considered shrewd criminal defense practice in Texas to remain silent during an examining trial, since the proceedings may be used as a "fishing expedition" to get a free look at the State's evidence without revealing the position of the defense.

17. In his *pro se* brief on appeal, appellant comes forward with all sorts of injurious admissions allegedly given during the period in question. However, there was

reached by the trial court. There is ample evidence to support the conclusion of the United States District Court that the appellant was not denied counsel at any time after his arrest and before his trial in the state criminal district court.

A cautious review of the entire record and all the contentions of the appellant convinces us that his claims are without merit and that the trial court properly denied relief.

The judgment is affirmed.

no mention of such admissions or injury in either the habeas corpus petition or the plenary hearing thereon.

Appellant's counsel on this appeal does not mention any injurious admissions or any other occurrence after arrest or during the examining trial which would prejudice the petitioner's rights.