UNITED STATES of America ex rel.
Stanley MEADOWS, Appellant,

v.

STATE OF NEW YORK and Warden of
the United States Penitentiary, Atlan-
ta, Georgia, Appellees.

No. 95, Docket 33147.

United States Court of Appeals,
Second Circuit.

Submitted Oct. 6, 1969.

Decided May 5, 1970.

Daniel D. Adams, New York City, submitted brief for appellant.

Louis J. Lefkowitz, Atty. Gen. of State of New York (Samuel A. Hirshowitz,

First Asst. Atty. Gen., Lillian Z. Cohen, Asst. Atty. Gen., of counsel), submitted brief for appellee State of New York.

Before WATERMAN, MOORE, and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Meadows appeals from the denial of his application for a writ of habeas corpus by the District Court. He claims that the failure of the state prosecutor to disclose to him the evidence possessed and the role played by two grand jury witnesses deprived him of his constitutional right to confront the witnesses against him. Therefore, he contends his convictions on the charges contained in the grand jury indictment are invalid.

## I. Facts

On September 11, 1958, Meadows was convicted for petit larceny, assault, and three counts of robbery in the County Court of Suffolk County, New York. These are the convictions he seeks to overturn on this appeal. He received a 10–20 year sentence on one count of robbery and suspended sentences on the other counts. His challenges to the sufficiency of the evidence and the instructions of the court were rejected on his direct appeal, see People v. Meadows, 12 A.D.2d 943, 214 N.Y.S.2d 264 (2d Dept. 1961), and leave to appeal to the New York Court of Appeals denied, see People v. Meadows, 13 A.D.2d 664, 215 N.Y.S.2d 473 (2d Dept. 1961). In 1965, having served eight years of his sentence, Meadows was paroled. But slightly more than one year later, after learning that Meadows had absconded and was wanted by federal authorities in connection with two bank robberies, the New York State Board of Parole issued a warrant declaring him delinquent and a certified copy of the warrant (known as a parole detainer) was lodged with the federal authorities. This detainer remains outstanding.

In June 1967 Meadows entered a plea of guilty to two charges of bank robbery in the District Court for the Eastern District of New York. For these crimes he received two concurrent 14-year sentences. He is now serving these sentences in the federal penitentiary in Atlanta, Georgia and does not contest the validity of his federal convictions.

In September 1966, before pleading guilty to the federal charges, Meadows moved for a writ of error *coram nobis* in the County Court of Suffolk County, presenting the same claim which is now before us, that he had been denied the right to confront two witnesses who had appeared before the grand jury which indicted him in 1958. The denial of this application, on the ground that Meadows' failure to request production of the witnesses at trial had resulted in a waiver of his confrontation claim, was affirmed by the Appellate Division in 1968. Later that year both the Appellate Division and the New York Court of Appeals denied Meadows leave to appeal to the Court of Appeals.

On October 22, 1968, a month after the New York Court of Appeals had denied him leave to appeal, Meadows presented his sixth amendment claims in a petition for a writ of habeas corpus brought in the District Court for the Northern District of Georgia, the district in which he is presently incarcerated. The petition was transferred to the Eastern District of New York, the district within which Meadows' state court trial took place. There, Judge Bruchhausen denied the petition on the grounds that Meadows was not "in custody" under his state court conviction and that he had failed to exhaust his state court remedies.

## II. Exhaustion of State Court Remedies

■■ We are of the view that the district court erred in deciding that Meadows' failure to present his sixth amendment claims on direct appeal in the state courts constituted either a waiver of these claims or a failure to exhaust his state court remedies. We do not believe that Meadows can be said to have

made a knowing waiver of his constitutional claims by not raising them on direct appeal. First, he alleges that he did not learn of the information which forms the basis of these claims until 1965, four years after the New York Court of Appeals had denied him leave to appeal. Second, the sixth amendment right to confrontation, upon which he bases his claims, was not made applicable to the states until 1965. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In 1966, the year after he obtained the factual and legal bases for his constitutional arguments, Meadows exhausted all available state court remedies by presenting his constitutional claims in a motion for a writ of error *coram nobis* and appealing the denial of this motion to the highest court of the state of New York.[1]

## III. Custody

■ A second threshold question raised on this appeal is whether Meadows may be said to be "in custody" under the New York state conviction which he asks us to declare invalid. It is well established that although Meadows is not presently serving a sentence imposed as a result of that conviction he is not foreclosed from challenging it in habeas corpus proceedings. The writ may be employed to contest the validity of future as well as present restraints. "[A] prisoner serving consecutive sentences is 'in custody' under any one of them for purposes of § 2241(c) (3)." Peyton v. Rowe, 391 U.S. 54, 67, 88 S.Ct. 1549, 1556 (1968). Although it is true that the two consecutive sentences of the petitioner in *Peyton* had been imposed by the same jurisdiction and Meadows seeks to challenge a state conviction while serving a federal sentence, we cannot agree with the district judge that this is a distinction which forecloses us from applying to this case the clearly stated rule and rationale announced in *Peyton*.

Meadows' interest in securing prompt adjudication of his constitutional claims is just as compelling as was Rowe's. Whether consecutive sentences have been imposed by the same or different jurisdictions does not affect the wisdom of a rule which requires conducting "meaningful factual [inquiries] * * * before memories and records grow stale." Peyton v. Rowe, 391 U.S. 54, 65, 88 S.Ct. 1549, 1555 (1968).

■ Neither do we perceive a sound reason for refusing to apply the *Peyton* rule because the restraint sought to be imposed on Meadows by the state of New York is not pursuant to a sentence to be served in the future but the result of a parole detainer already lodged but to take effect in the future. It is agreed that because of the parole detainer, Meadows will not be placed at liberty when his federal prison term is completed; instead, he will be delivered into the custody of the appropriate New York state authorities for them to make such disposition of the detainer as they deem proper. The detainer, after all, represents a present claim by New York of jurisdiction over Meadows' person and of the right to subject him to its orders and supervision in the future. As such, it constitutes sufficient "custody" to render the remedy of habeas corpus available to Meadows. E. g., Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969); George v. Nelson, 410 F.2d 1179 (9th Cir.), cert. granted, 396 U.S. 955, 90 S.Ct. 433, 24 L.Ed.2d 419 (1969); United States ex rel. Van Scoten v. Pennsylvania, 404 F.2d 767 (3d Cir. 1968).

## IV. Jurisdiction

Once it is established that Meadows may now attack his New York state conviction by an application for a writ of habeas corpus in the federal courts a more troublesome issue requires resolution—which district court or courts have

---

1. The state courts need not have decided the merits of the claims raised by the applicant in the state courts in order for him to be considered to have exhausted his state court remedies. See Peyton v. Rowe, 391 U.S. 54, 56 & n. 2, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).

jurisdiction to consider his petition. Meadows is presently incarcerated, pursuant to a federal sentence, in a federal penitentiary located in the Northern District of Georgia; he seeks to challenge a New York conviction and sentence imposed within the Eastern District of New York. Since our jurisdiction over this appeal rests upon the jurisdiction of the court below, the precise question before us is whether, despite Meadows' present confinement in the state of Georgia, a district court in the Eastern District of New York, the sentencing district, may properly take jurisdiction over his collateral attack on a New York conviction. The courts have been unable to reach agreement over the proper resolution of this jurisdictional nicety. Compare Word v. North Carolina, 406 F.2d 352 (4th Cir. 1969) (*en banc*) (sentencing district has jurisdiction), with United States ex rel. Van Scoten v. Pennsylvania, 404 F.2d 767 (3d Cir. 1968) (sentencing district does not have jurisdiction), and George v. Nelson, 410 F.2d 1179 (9th Cir.) (district of incarceration has jurisdiction), cert. granted, 396 U.S. 955, 90 S.Ct. 433, 24 L.Ed.2d 419 (1969).[2]

The jurisdictional statute, 28 U.S.C. § 2241(a), provides that "[w]rits of habeas corpus may be granted by the * * * district courts * * * within their respective jurisdictions." In Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948), a case involving the predecessor of this statute, the Supreme Court considered the question "whether the words 'within their respective jurisdictions' limit the district courts to inquiries into the causes of restraints of liberty of those confined or restrained within the territorial jurisdictions of those courts." 335 U.S. at 190, 68 S.Ct. at 1444. The petitioners

in *Ahrens* were 120 Germans, deemed to have been threats to the national security during World War II and confined at Ellis Island, New York prior to deportation. By their petition for habeas corpus, which they filed in the district court for the District of Columbia, they sought immediate release from present physical confinement. The Court affirmed a dismissal for want of jurisdiction, observing "that the jurisdiction of the District Court to issue the writ *in cases such as this* is restricted to those petitioners who are confined or detained within the territorial jurisdiction of the court * * *." 335 U.S. at 192, 68 S.Ct. at 1445 (emphasis added). This result was well adapted to the relief sought. If the petitioners' claims were determined to be meritorious, a court in the state of incarceration was best situated to order their release from custody.

The Court justified its decision in *Ahrens* by reference to both statutory purpose and considerations of policy. As evidence of the purpose for which the phrase "within their respective jurisdictions" was inserted into the statute, Justice Douglas, writing for the majority, invoked the concern voiced on the floor of Congress that without the phrase the bill would permit "a district judge in Florida to bring before him some men convicted and sentenced and held under imprisonment in the State of Vermont or in any of the further States." 335 U.S. at 192, 68 S.Ct. at 1445. A federal judge sitting in the state of Florida, the Congress evidently believed, should not ordinarily tamper with a Vermont judgment of conviction. The policy factors cited by Justice Douglas in support of the decision to restrict the habeas corpus jurisdiction of the district courts to petitioners actually physically confined within the territorial jurisdiction of the

2. George v. Nelson did not actually hold that the sentencing district could not assume jurisdiction over a habeas corpus application seeking the withdrawal of a parole detainer. In a footnote, see 410 F. 2d at 1181, n. 5, the court cited prior cases suggesting that such a rule obtained in the Ninth Circuit, but all of these cases, including Ashley v. Washington, 394 F.2d 125 (1968), relied upon by our brother Waterman, were decided before the Supreme Court's decision in Peyton v. Rowe.

court were the "opportunities for escape afforded by travel, the cost of transportation," and the administrative burden of producing prisoners who must be transported thousands of miles to appear in court.

The *Ahrens* opinion speaks in general terms; its holding is not explicitly limited to habeas corpus applicants seeking release from present, physical custody, but appears to apply to all petitioners. One reason for the absence of specific limitation is clear. At the time *Ahrens* was decided, a petitioner could employ the writ only if a decision in his favor would result in his immediate release. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). Therefore, despite the general language of the opinion, the precise holding of *Ahrens* applies only to the jurisdiction of the district courts in habeas corpus proceedings commenced by petitioners seeking immediate release from confinement.

Since the Supreme Court overruled *McNally* in Peyton v. Rowe, *supra,* an entirely new class of habeas corpus petitioners has appeared. These petitioners, exemplified by Meadows, do not contest the legality of their present confinement under the laws of one sovereign; rather they seek to challenge a restraint to be imposed at a later date by another jurisdiction. Their quarrel is not with their present custodian but with the officials of the jurisdiction which threatens their liberty in the future.

In determining whether the *Ahrens* rule should be extended to encompass this new class of petitioners, we must, of course, give due consideration to the factors which originally led the Court to promulgate the doctrine of strictly limited territorial jurisdiction. The first factor is the purpose of the statute as expressed in congressional debate. Meadows has been convicted and sentenced in the State of New York and is seeking to challenge that judgment of conviction under which, we learn from Peyton v. Rowe, he is presently "in custody." Should we hold that a district judge in the Eastern District of New York, the very district in which Meadows was sentenced, cannot entertain his petition, the fears expressed on the floor of Congress would be realized, for then, a district judge sitting in the state of Florida would have the duty to adjudicate an application for habeas corpus presented by a petitioner who was convicted, sentenced and in custody pursuant to the laws of Vermont.

The second factor which counseled the Court to formulate the *Ahrens* rule of territorial jurisdiction was a broad consideration of policy—specifically, the risk and expense of transporting prisoners long distances to appear before a court. Only three years after *Ahrens,* however, the Supreme Court had occasion to reconsider the relative merits of the sentencing district and the district of incarceration as a form of habeas corpus proceedings. United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1951). Upon reconsideration, the difficulties involved in transporting prisoners did not loom as large as the *Ahrens* opinion had suggested. Habeas corpus proceedings, the Court recognized, do not always require the physical presence of the petitioner. And even when the petitioner is required to be produced for a hearing, countervailing considerations nevertheless militate in favor of the sentencing state. The applicable court records and the witnesses whose presence is likely to be required at a hearing are to be found in the sentencing state. To require a prisoner seeking to challenge a restraint to be imposed in the future by a sovereign other than his present custodian to proceed without witnesses would eviscerate Peyton v. Rowe. Moreover, granting jurisdiction only to the state of confinement would prejudice not only the petitioner but also the respondent, for the officials of the sentencing state rather than the state of incarceration are chiefly interested in the validity of the challenged conviction and, consequently, in opposing or, if the public interest so dictates, advocating the grant of the writ. In fact,

it would appear that every individual or body which has weighed the competing merits of the two potential forums—the Congress,[3] the Supreme Court,[4] the lower federal courts,[5] the Judicial Conference of the United States,[6] the commentators,[7] and even, it appears, our able dissenting brother Waterman—has struck the balance in favor of the sentencing district.

■■■ Our brother Waterman contends that we should not take account of these matters of policy in deciding this appeal. With this, we cannot agree. We are being asked to extend *Ahrens* to a class of habeas corpus petitioners who did not exist at the time the Supreme Court decided *Ahrens,* petitioners who demand not an immediate release from physical confinement but the withdrawal of a potential restraint on future liberty. In determining the advisability of such an extension, it is our duty to consider the applicability to the case before us of the considerations which led to the decision in *Ahrens.* The Supreme Court itself has not been at all reluctant to depart from the apparently uncompromising dictates of *Ahrens* whenever, as a result of differing circumstances, strict adherence would have thwarted the

effectiveness of the writ. For example, one who is confined abroad, and thus is not physically present within the territorial jurisdiction of any of the district courts, may nevertheless bring and maintain an application for habeas corpus. *Hirota v. MacArthur,* 338 U.S. 197, 69 S.Ct. 197, 93 L.Ed. 1902 (1948). Similarly, the jurisdiction of a district court is not defeated when a petitioner who has commenced a proceeding while present in the district is involuntarily removed during its pendency. *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).

■■■ Finally, the most convincing rationale for the *Ahrens* decision—the goal of ensuring that an application for a writ of habeas corpus will be considered by the district court best situated to grant the relief sought—provides no stronger support for extension of the *Ahrens* rule to the facts before us than do the factors articulated by the Court in the *Ahrens* opinion. The crucial distinction, we emphasize, is that the petitioners in *Ahrens,* and all petitioners entitled to claim the protection of the Great Writ at the time of the *Ahrens* decision, requested immediate release from present, physical confinement. The district

---

3. The enactment of the present version of 28 U.S.C. § 2255 embodies a congressional determination that the appropriate forum for collateral attack upon a federal conviction is the sentencing district rather than the district of confinement. The same determination is inherent in the passage of 28 U.S.C. § 2241(d), a section which provides for the intrastate transfer between the sentencing district and the district of confinement of collateral attacks on state court convictions.

To some extent, these enactments were motivated by a desire to equalize the burden of adjudicating collateral attacks upon convictions among the various district courts as well as a determination as to the relative merits of the two jurisdictions. A district court should not be required to shoulder the entire load merely because fortuitous circumstances have placed a federal penitentiary or state prison within its borders. There is a similar interest present in this case. The judicial districts with federal penitentiaries

within their boundaries should not be required to consider and decide all collateral attacks on out-of-state parole detainers.

4. See *United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1951).

5. *Word v. North Carolina,* 406 F.2d 352 (4th Cir. 1969).

6. It was upon the recommendation of the Judicial Conference of the United States that the Congress enacted 28 U.S.C. § 2255, permitting collateral attacks upon federal convictions to be maintained in the sentencing district. See *United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1951); *Word v. North Carolina,* 406 F.2d 352 (4th Cir. 1969).

7. E. g., Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1160–1165 (1970); Fairman, Some New Problems of the Constitution Following the Flag, 1 Stan.L.Rev. 587, 633–640 (1949).

court for the district in which they were actually incarcerated was uniquely qualified to compel compliance with an order for their release. Meadows' situation is otherwise. He does not question the legality of his present detention in the state of Georgia; instead, his aim is to secure the withdrawal of a parole detainer lodged against him by the state of New York. The court best situated to grant this relief is a district court located in the state of New York.[8] In our view, consequently, neither considerations of policy, legislative purpose, nor the underlying rationale of *Ahrens* suggests the advisability of its extension to this case. We therefore conclude that the court below properly assumed jurisdiction over the subject matter of Meadows' application.[9]

8. Our holding that the sentencing district may properly assume jurisdiction over an application such as that filed by Meadows should not be taken to suggest that the district of confinement does not possess concurrent jurisdiction. In some circumstances, where the petitioner challenges a detainer not because it constitutes a threat to his future liberty but because of its present prejudicial effects within the district of confinement, for example, decreased eligibility for parole or an increased sentence imposed under a multiple offender statute, the district of confinement may actually be a preferable forum. See Word v. North Carolina, 406 F.2d 352, 357 n. 6 (4th Cir. 1969). In that situation, the district of confinement may be the court best situated to ensure compliance with the grant of the desired relief. We see no merit, therefore, in any claim that the district court in the Northern District of Georgia (Judge Edenfield), had no jurisdiction to determine the gravamen of Meadows' claim and, in the exercise of his statutory discretion, to transfer the application to the sentencing district.

9. Judge Edenfield based his transfer on 28 U.S.C. § 2241(d), a provision which authorizes only intrastate transfers. In our view the result Judge Edenfield reached—referral of the application to the sentencing district—was proper, but his cited authority incorrect.

The appropriate foundation for the transfer was 28 U.S.C. § 1404(a), which provides for the "transfer [of] any civil action to any other district or division where it might have been brought" "for the convenience of parties and witnesses, in the interest of justice." Since habeas corpus proceedings are civil in nature, they are subsumed under the phrase "any civil action." See Webb v. Beto, 362 F. 2d 105 (5th Cir.), cert. denied, 385 U.S. 940, 87 S.Ct. 307, 17 L.Ed.2d 219 (1966). We have already indicated, *see* note 8 *supra*, that Meadows' application "might have been brought" in either the Northern District of Georgia or the Eastern District of New York. In light of the ap-

parently universally held view that both parties will be able to litigate more effectively in the sentencing district and that the witnesses are also likely to be found in that district, *see* notes 3–7 and accompanying text *supra*, we are unable to conclude that the transfer was not a valid exercise of Judge Edenfield's statutory discretion or that it was not in accordance with the statutory criteria of "convenience of parties and witnesses." Judge Edenfield's consideration of the location of Meadows' prospective witnesses within the reach of an Eastern District of New York subpoena and his finding that transfer would be "in furtherance of the ends of justice" establish the propriety of applying § 1404(a) to this case.

Our brother Waterman reasons that, by allowing an interstate transfer of Meadows' petition for a writ of habeas corpus under § 1404(a), we are rendering the intrastate transfer provisions of § 2241(d) superfluous. We are unable to accept this contention. Our decision applies only to petitioners seeking to challenge a threatened future restraint on their liberty. Those petitioners who contest the validity of present physical confinement under a state court judgment of conviction must still resort to the transfer provisions of § 2241(d) in order to have their applications transferred from the district of incarceration.

Insofar as our brother Waterman is suggesting that provision for intrastate transfers in § 2241(d) indicates an intention that there should be no interstate transfers, we emphasize that this section was enacted two years before the Supreme Court's decision in Peyton v. Rowe. As we have already noted, prior to that decision, a prisoner could not employ the writ to challenge threatened future restraints under convictions entered in the courts of a far distant state. Rather, at that time a prisoner could attack only those state court convictions under which he was presently physically confined. Because each state maintains its own penal system for the incarceration of its own

## V. Right to Confrontation

From our conclusions that the district court properly assumed jurisdiction over Meadows' application, but erroneously dismissed for lack of custody and failure to exhaust state court remedies, it follows that Judge Bruchhausen should have reached the merits of the claims presented. However, we are of the view that if the district court had considered the merits, it could properly have denied the application. The substance of Meadows' claims is that his sixth amendment right to confront the witnesses against him was infringed by the prosecution's failure to disclose to him the "nature and character of the evidence possessed and the role played" by two grand jury witnesses who were not called to testify at trial. The first witness was Detective Charles Gloeckner of the Suffolk County Police Department who allegedly "played a material role in collecting and evaluating the evidence" which eventually led to Meadows' conviction; the second was David Rutherford, a private citizen who allegedly told the grand jury that Meadows had confessed to him. Regardless of the importance of the role played by these two witnesses before the grand jury, the sixth amendment does not require disclosure of grand jury testimony to a defendant. The right to confrontation is not a discovery or procedural weapon which enables defendants to secure disclosure of all the evidence in the possession of the prosecution. The protection afforded defendants by this constitutional right is of a different character. Specifically, the sixth amendment applies to evidence actually disclosed at a trial. It ensures that the trustworthiness of this evidence will be tested by effective cross-examination in the presence of the jury and by personal observation of the witness who provides it. Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). But a defendant has no right to confront a "witness" who provides no evidence at trial. See United States ex rel. Laughlin v. Russell, 282 F.Supp. 106 (E.D.Pa. 1968).

A more appropriate basis for Meadows' arguments would have been the right to procedural due process, which in some circumstances requires the prosecution to disclose evidence favorable to the accused. See, e. g., Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). But even if Meadows had characterized his claim properly he would be entitled to no relief. "[I]t is only when the court concludes that the undisclosed evidence would have permitted the defendant so to present his case that he would probably have raised a reasonable doubt as to his guilt in the mind of a conscientious juror that justice compels the invalidation of the conviction." United States v. Keogh, 391 F.2d 138, 148 (2d Cir. 1968). Meadows does not even allege that the evidence presented to the grand jury by Gloeckner and Rutherford was favorable to him, let alone that the introduction of the testimony of these two witnesses at trial would have created "a reasonable doubt as to his guilt in the mind of a conscientious juror." Because Meadows' allegations themselves establish that his constitutional claims are without merit, we see no reason to remand to the district court for a hearing on the merits.

Affirmed.

---

prisoners, the state in which a state court prisoner is presently physically confined is also the sentencing state. Since, at the time § 2241(d) was enacted, the state of incarceration and the sentencing state were thus invariably one and the same, Congress could have perceived no reason to provide for interstate transfers in this section. Where Congress could perceive such a need, with respect to federal prisoners who were often transported to prisons located in states other than that of the sentencing court, it did make such a provision. See 28 U.S.C. § 2255.

**WATERMAN, Circuit Judge (dissenting):**

I cannot agree with my brothers that the court below properly assumed jurisdiction in this case. Meadows, a federal prisoner incarcerated in the penitentiary in Atlanta, Georgia, brought his petition for habeas corpus to the federal district court for the Northern District of Georgia. His petition challenges not the federal conviction which resulted in the imposition of the sentence he is now serving, but rather a prior New York conviction which, because his federal crimes broke the conditions of his parole subsequent to that conviction, has resulted in the lodgment of a parole detainer against him in Georgia. Unless Meadows's habeas petition prevails, he will be returned to New York at the end of his present sentence to face the prospect of further imprisonment there.

Judge Edenfield in Georgia, to whom Meadows's petition was presented, transferred the case to the Eastern District of New York, the federal court having territorial jurisdiction over the place where Meadows was convicted and sentenced for his state crime. Judge Edenfield effected this transfer on his own motion pursuant to 28 U.S.C. § 2241(d).[1] My brothers and I agree that this statute permits a transfer from the district of imprisonment to the district having jurisdiction over the place of conviction only if these two districts are located within the same state.[2] My brothers, however, feel that the Georgia court's transfer can be saved under either 28 U.S.C. § 1404(a)[3] or 28 U.S.C. § 1406 (a).[4] Both of the sections by their express terms require that the petition be transferred to a given judicial district only if the prisoner could have brought the petition in that district as an original matter. See Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). I have no hesitancy in holding, contrary to the belief of my brothers,

1. The statute, approved Sept. 19, 1966, reads as follows:

§ 2241. Power to grant writ.

\* \* \* \* \*

(d) Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination.

2. The statute applies only to persons convicted by a state court in a "State which contains two or more Federal judicial districts \* \* \*." Were we to interpret the statute otherwise than we all do, the Georgia federal court here could transfer the petition of a prisoner challenging a New York detainer, since that state has two or more federal judicial districts, but not the petition of a prisoner challenging a Connecticut or Vermont detainer, since these states have but one federal judicial district. The statute's legislative history also makes it clear that Section 2241(d) was designed to facilitate transfers between districts of imprisonment and districts having jurisdiction over the place of conviction only when both districts are within the same state. See S.Rep. 1502, 89th Cong., 2d Sess., U.S.Code Cong. & Admin.News 89th Cong., 2d Sess., pp. 2968–2978 (1966).

3. Section 1404 provides as follows:

§ 1404. Change of venue

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

4. Section 1406 provides:

§ 1406. Cure or waiver of defects

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

that Meadows, confined in Georgia, cannot bring a habeas corpus petition in a New York federal district court. Therefore, I do not believe that his petition can be transferred there under either § 1404(a) or § 1406(a). I believe that *Ahrens v. Clark*, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948) continues to require that a petition for a writ of habeas corpus can be brought only in the district where the prisoner is physically incarcerated.

I share the view of the majority that it would seem that judicial and prosecutorial convenience, and frequently the convenience of the prisoner, would be served by permitting the prisoner to file his habeas corpus petition in a federal district court in the state which has imposed the sentence and detainer challenged in the petition instead of limiting him to filing it in a court in the state of his incarceration. However, I believe that *stare decisis* prevents us from reaching the result my brothers reach.

As the majority opinion points out, Ahrens v. Clark involved German nationals, held at Ellis Island in New York, who petitioned for habeas corpus in the District Court for the District of Columbia, where their custodian, the United States Attorney General, was to be found. The Court held that they could not do so, for two reasons. First, the Court, speaking through Justice Douglas, stated that the creators of federal habeas corpus contemplated that the petitioner should be brought physically before the judge who granted the writ, and that policy considerations militated against transporting prisoners long distances to a hearing: such a procedure would be costly and administratively burdensome and would present opportunities for escape. Second, the opinion cites the justification given in legislative debate for limiting the power of courts to the granting of writs of habeas only "within their respective jurisdictions." This justification was that otherwise a court in Florida, for example, could compel production of a prisoner from as far away as Vermont or from more distant states. To prevent this result, the Court concluded that a federal district court could grant a writ only to persons physically within its district.

The majority in the instant case conclude that the wrong policies were served by the *Ahrens* opinion and seek to distinguish that case from the one here in several ways, none of which I find convincing. The opinion points out that whereas the petitioners in *Ahrens* were challenging a present sentence, the present petitioner is challenging a future sentence. The opinion then suggests several factors which might make this difference into a viable distinction.

First, the majority suggest that were the jurisdiction of the court below in this case denied and if petitioner were therefore relegated to the district court in Georgia, the result would be analogous to the fear cited in *Ahrens* that a Florida court might hear the petition of a man convicted, sentenced, and imprisoned in Vermont. This suggestion mistakes the import of the Florida-Vermont reference in *Ahrens*. The controlling fear there was that a man *imprisoned* in one state (Vermont) would have to be transported to another state (Florida) for trial. To avoid this possibility, *Ahrens* permitted a prisoner convicted and sentenced by a federal court in one state to file for habeas corpus in the federal district court within the state of his imprisonment. This result was entirely commonplace under *Ahrens*, as federal prisoners brought their petitions solely in the district where their prisons were located. See United States v. Hayman, 342 U.S. 205, 213–214, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

The majority opinion suggests a second reason for treating the instant petitioner differently from those in Ahrens v. Clark, namely, that the Court itself has found the *Ahrens* policies untenable and has compromised them. However, it is not within the province of a court

1187

of appeals to overrule a Supreme Court precedent because it believes the policies served by the precedent to be undesirable, or even because it suspects that the original case would be overruled by the Court were the Court to reexamine it. Ahrens v. Clark has not been overruled. United States v. Hayman, *supra* at 220, 72 S.Ct. 263, expressly pointed out that *Ahrens* was not overruled by 28 U.S.C. § 2255, nor did *Hayman* itself overrule *Ahrens*. Nor do the other cases cited by the majority undermine *Ahrens* or raise any doubt that *Ahrens* continues to be the law. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), merely reiterates the rule originally set forth in Ex parte Mitsuye Endo, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944), cited and rationalized by Justice Douglas in the *Ahrens* majority opinion. Hirota v. MacArthur, 338 U.S. 197, 69 S.Ct. 197, 93 L.Ed. 1902 (1948) which holds that a person not confined within the physical jurisdiction of any federal district court may nonetheless bring a habeas petition, does not purport to overrule *Ahrens*.

Finally, the majority argues that the most convincing rationale for *Ahrens* is that the court best situated to grant the relief a habeas petitioner seeks should hear the petitioner's case. With deference, *Ahrens* does not purport to serve that goal, or if it does, it does so by holding that the identity of such a court is to be determined by the place where the petitioner is incarcerated. This final argument of the majority, once again, does not draw a meaningful distinction between the petitioner here and the petitioners in *Ahrens*, but is an attempt to reweigh the same considerations already weighed in that case and to reach a different result.

In sum, the distinction between the *Ahrens* case, and our case where peti-

tioner challenges a state sentence to be served in the future, is a distinction without a difference. It may be true that, as the majority assert, petitioner here is "in custody" of the New York authorities pursuant to Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968),[5] but in *Ahrens* the prisoners were also found to be "in custody" of the United States Attorney General in Washington—a fact which did not prevent the denial of habeas corpus jurisdiction to the District of Columbia courts. The fact that state law and not federal law underlies the sentence Meadows seeks to set aside makes little difference. The questions of law presented to the federal courts in a federal habeas corpus proceeding are still federal questions. The policy considerations are essentially unchanged: on one hand it is desirable not to have to transport prisoners to hearings; on the other hand it is desirable to conduct the trial where witnesses, records, and the original prosecutorial officers are to be found. Ahrens v. Clark resolved these issues conclusively; it is not the business of this court to overrule the Supreme Court.

In addition to *stare decisis*, one further argument militates against the result reached by the majority. 28 U.S.C. § 2241(d) (Supp. IV 1969)[6] provides that a state prisoner confined in a state which contains more than one federal judicial district may bring his petition for a writ of habeas corpus to the district having territorial jurisdiction over the place of his confinement, or, alternatively, in the district having jurisdiction over the courtroom in which he was convicted. If we were to agree with the majority's holding, that the right of transfer exists between states, we would render meaningless that portion of Section 2241(d) which permits a choice between the district of confinement and the

---

5. As has been pointed out by the majority, Peyton v. Rowe did not deal with an interstate detainer. That case only decided that a Virginia prisoner serving in Virginia the first of consecutive sentences imposed by Virginia courts was in Virginia's custody not only for a sentence being served but also for those yet to be served.

6. See footnote 1, *supra*.

district of conviction only when both districts are within the same state. See footnote 2 *supra.* We should not interpret the law to render part of an unambiguous statute meaningless, even when the alternative is to further policies which may be undesirable policies to perpetuate.

The majority of the Courts of Appeals which have considered the question before us have resolved it as I would resolve it. In United States ex rel. Van Scoten v. Pennsylvania, 404 F.2d 767 (3 Cir. 1968), appellant, who was "serving a prison sentence in the New Jersey State Prison at Trenton, New Jersey, imposed by a New Jersey state court, filed a petition for a writ of habeas corpus in the Eastern District of Pennsylvania, challenging the validity of a sentence imposed upon him by a Pennsylvania state court, the service of which [was] to commence upon completion of his New Jersey imprisonment." *Id.* at 767. The Third Circuit held that the District Court in Pennsylvania

"* * * was without territorial jurisdiction to entertain Van Scoten's petition and should have dismissed it . for ·that reason since at the time it was filed Van Scoten was incarcerated in a New Jersey jail which is outside the territorial jurisdiction of the Eastern District of Pennsylvania. As subsequently developed, it is settled law that a federal district court is without jurisdiction to issue a habeas corpus writ if the person detained is not within its territorial jurisdiction when his petition for the writ is filed." *Id.* at 768.

The Ninth Circuit in George v. Nelson, 410 F.2d 1179 (9 Cir.), cert. granted, 396 U.S. 955, 90 S.Ct. 433, 24 L.Ed.2d 419 (1969) held that a California prisoner serving a California-imposed sentence properly challenged the validity of a North Carolina conviction by bringing his application for the issuance of the habeas writ to the federal district court in California having territorial jurisdiction over the San Quentin prison in which the prisoner was confined. And in Ashley v. Washington, 394 F.2d 125 (9 Cir. 1968) that court arrived at the result the Third Circuit reached in *Van Scoten* and held that a Florida prisoner in Florida custody after a Florida conviction, faced with a detainer filed by the State of Washington, could not challenge the Washington conviction upon which the detainer was based, by applying for the issuance of· a habeas corpus writ to a federal district court in Washington.

On the other hand, in Word v. North Carolina, 406 F.2d 352 (1969) the Fourth Circuit, *in banc,* considered the applications of three Virginia prisoners against whom North Carolina detainers had been filed and who claimed constitutional infirmities in their North Carolina convictions. Two of the appellant prisoners filed applications in the District Court for the Eastern District of Virginia, the court having territorial jurisdiction over them, and one prisoner filed in the Eastern District of North Carolina, the court having jurisdiction over the attorney general of North Carolina who had filed the detainer. All three applications were dismissed by the district courts for lack of jurisdiction. Chief Judge Haynsworth, writing for the Fourth Circuit majority, held that the dismissal of the applications filed in Virginia, the state having physical custody of the petitioners, should be affirmed and the application filed in the demanding state, North Carolina, was properly filed there though the petitioner was physically present in Virginia.

In the face of this conflict within the circuits I should point out that the problems posed by these cases existed within the federal system until Congress passed the Act in 1948 which has now become 28 U.S.C. § 2255. See United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

Pursuant to that section a federal prisoner at the Atlanta penitentiary may bring his petition attacking the federal sentence he is serving or a federal sentence consecutively to be served to the sentencing court, wherever that court may happen to be. By passing this remedial legislation Congress indicated that post-conviction review of sentences is best conducted in the sentencing court instead of in the court having jurisdiction over the place of the prisoner's confinement.

A similar amendment would clear up the problems posed here. As I have stated above, I would hold that the Northern District of Georgia had jurisdiction over the Meadows application. I would also hold that only by judicial legislation in an area where Congress has effectively legislated in the past can we support a decision that the Georgia judge properly transferred this case to the Eastern District of New York, so that jurisdiction in the New York court was created. I agree with the Third and Ninth Circuits, and with the approach of the Fourth Circuit's dissenting judge.

Of course it seems to be a hardship upon Meadows and the State of New York to require that the issues raised by the habeas corpus petition be adjudicated outside of the boundaries of New York, but we of the Second Circuit have regularly adjudicated the validity of out-of-state convictions. See, for example, U. S. ex rel. Turpin v. Snyder, 183 F.2d 742 (2 Cir. 1950) (A. N. Hand); U. S. ex rel. Durocher v. LaVallee, 330 F.2d 303 (2 Cir. 1964) (Kaufman, *in banc*).

Accordingly, I would hold that this petition filed by Meadows in the federal district court having jurisdiction of the place of his confinement is not only not transferable under 28 U.S.C. § 2241(d) to any federal district court in the State of New York but also is not transferable under 28 U.S.C. § 1404(a) or § 1406(a) to the federal district court in New York having territorial jurisdiction over the place where he was tried and sentenced.